**Peggy STEENBERGEN, Individually and On Behalf of the Estate of Joseph Ray Steenbergen, Deceased; and Janet Steenbergen As Next Friend of Julie Ann Steenbergen and Jennifer Jo Steenbergen, Minors, and North River Insurance Company, Appellants,**

v.

**FORD MOTOR COMPANY and Transport Life Insurance Company, Appellees.**

**No. 05–89–01396–CV.**

Court of Appeals of Texas, Dallas.

June 18, 1991.

Rehearing Overruled Sept. 2, 1991.

Richard N. Countiss, Houston, Rita M. Zimmer, Leon R. Russell, and R. Windle Turley, Dallas, for appellants.

Laura A. Lane, Dallas, Eugene W. Brees, II, Austin, Malcolm E. Wheeler, Los Angeles, Cal., John M. Thomas, Dearborn, Mich., Kevin J. Cook, Dallas, and Deborah Beck McWilliams, Austin, for appellees.

Before ENOCH, C.J., and GERALD T. BISSETT [1] and BILL J. STEPHENS [2], JJ. Retired (Sitting by Assignment).

## OPINION

ENOCH, Chief Justice.

This is an appeal from a take-nothing judgment rendered in a wrongful death case. Only the products liability cause of action was submitted to the jury, which found that the automobile involved in the collision was not defectively designed. In six points of error, the Steenbergens challenge various evidentiary rulings made by the trial court. They also allege the trial court erred by allowing the court reporters to prepare daily transcripts of testimony presented at trial. Additionally, one of the intervening insurance companies brings two points of error challenging the manner in which the trial court assessed a portion of the court costs. And finally, in a cross-point, Ford alleges the trial court erred in overruling its motion for summary judgment, which raised the issue of federal preemption of part of the defective design cause of action. For the reasons stated below, we modify the judgment of the trial court, and as modified, affirm.

## FACTS

On July 1, 1984, Joseph Ray Steenbergen was involved in an automobile collision. He was driving a 1982 Ford LTD when his vehicle collided with a pick-up truck. Steenbergen, who was not wearing his seatbelt, suffered multiple injuries. After several months of hospitalization and treatment, he was released, but shortly thereafter died, ostensibly as the result of these injuries.

---

1. The Honorable Gerald T. Bissett, Justice, Retired, Court of Appeals, Thirteenth District of Texas at Corpus Christi, sitting by assignment.

2. The Honorable Bill J. Stephens, Justice, Retired, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

## DOCUMENT PRODUCTION

The Steenbergens have grouped their first three points of error together, and we will address them in that manner. They generally complain that they were prevented from obtaining evidence necessary to the presentation of their case by the manner in which the trial court allowed Ford Motor Company to respond to requests for production. Specifically, they allege that Ford's method of producing documents in response to their request for production of documents No. 17, and the trial court's protective order, was harmful error requiring reversal. We disagree.

Request No. 17 asked Ford to produce:

All documents regarding, discussing, or pertaining in any way to any communications from you or to you or from any other person to any other person regarding, discussing, or pertaining in any way to the subject of use or installation of airbags in motor vehicles, including documents from or to:

(1) any governmental entity;

(2) any trade or professional association;

(3) any of your agents, employees, or representatives;

(4) any member of the public;

(5) any other motor vehicle manufacturer.

In response, Ford indicated this request would require the production of what could amount to millions of documents. Ford had been collecting these documents in what came to be known as the "reading room" in response to this and numerous other cases involving claims based on the absence of passive restraints in its vehicles. As a result, Ford sought and received a protective order from the trial court approving, among other things, production of these documents at Ford's headquarters in Dearborn, Michigan.

The Steenbergens argue that allowing Ford to produce these documents in the reading room in Dearborn violates Rules 167 and 168 of the Texas Rules of Civil Procedure. Assuming that the Steenbergens have not waived any error by failing to complain in the trial court (indeed, if not

expressly approving) of this procedure, we find the Steenbergens' argument to be without merit.

■ The goal of discovery is to seek the truth, to ensure that disputes are decided by the facts revealed, not those concealed. *Jampole v. Touchy,* 673 S.W.2d 569, 573 (Tex.1984). We must recognize that the adversarial approach to discovery, however, oftentimes frustrates this purpose. Parties can hinder, or be hindered by, their opponents, by forcing them to utilize repetitive and expensive methods to find out these facts. *Garcia v. Peeples,* 734 S.W.2d 343, 347 (Tex.1987). Also, parties frequently make overly broad, burdensome and/or harassing requests for information, or seek nondiscoverable matters. *McKinney v. National Union Fire Ins.,* 772 S.W.2d 72, 75 (Tex.1989). It is well known that discovery costs are a major part of the overall expense of a trial. For that reason, our courts have recognized that the concept of shared discovery can be an effective means of insuring full and fair disclosure. Allowing similarly situated parties access to information from a common adversary promotes consistency in responses and prevents needless duplication and expense. *Garcia,* 734 S.W.2d at 347.

■ However, it is important for us to recognize that the tool of shared discovery cuts both ways. Just as a plaintiff should be allowed access to the discovery of other plaintiffs dealing with identical issues, so too should a defendant facing multiple lawsuits be granted the opportunity to reduce the expense and intrusion on its affairs by providing a common pool of information in a central location. Indeed, it is apparent from the record that the Steenbergens, in fact, did share access to this common pool of information with a number of other individuals involved in similar litigation against Ford.

Rule 167 requires the party producing documents to "produce them as they are kept in the usual course of business, or shall organize and label them to correspond with the categories in the request." TEX. R.CIV.P. 167(1)(f). That is precisely what

Ford did. In response to numerous lawsuits, Ford had collected in the reading room *in the usual course of its business* of defending itself in passive restraint litigation, all those documents which the Steenbergens requested. And the Steenbergens' Request No. 17 did not seek to organize or label these documents into categories. It merely indicated five groups of individuals or entities it wished included as either sources or recipients of communications regarding, discussing, or pertaining in any way to airbag use or installation.

Rule 168 allows the party responding to a discovery request the option:

> to specify the [business] records from which the answer may be derived or ascertained and, if applicable, to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries. The specification of records provided shall include sufficient detail to permit the interrogating party to locate and identify as readily as can the party served, the records from which the answers may be ascertained.

TEX.R.CIV.P. 168(2)(b).

■ *All* the documents in the reading room apparently satisfied the Steenbergens' request. Ford responded to the Steenbergens' request in a manner which the trial judge and the Steenbergens themselves found satisfactory up to the time of trial. A party will not be heard to complain of error in the trial court which occurred at that party's request. *Shafer v. Bedard*, 761 S.W.2d 126, 131 (Tex.App.—Dallas 1988, no writ). The Steenbergens sought and were granted access to countless documents pertaining to passive restraints. They cannot now complain that because of the sheer magnitude of their request, it was impossible for them to ferret out those documents that would be most damaging to their opponent. Further, they cannot complain that Ford sought to introduce documents that they may have overlooked or perhaps even consciously decided did not aid in the presentation of their cause. The Steenbergens

were given the opportunity to examine the documents in the reading room for over two years before trial. They requested and received copies of over 16,000 of these documents, and nothing prevented them from requesting and receiving copies of all of those remaining.

The overriding objective of our rules is "to obtain a just, fair, equitable and impartial adjudication of the rights of *litigants* ... with as great expedition and dispatch and at the least expense [] to the *litigants*...." TEX.R.CIV.P. 1 (emphasis added). *Litigants* include both plaintiffs *and* defendants. The Steenbergens cannot insist on taking advantage of virtually limitless access to the information Ford was required to make available to them, and later complain that the information they requested was more than they could digest. Absent some clear showing that the action of the trial court made it impossible to obtain crucial evidence, implicit in which is proof that more diligent discovery was impossible, we will not upset the trial court's conduct of discovery. *In re Fine Paper Antitrust Litigation*, 685 F.2d 810, 818 (3rd Cir.1982). We overrule the Steenbergens' first three points of error.

## AUTHENTICATION OF DOCUMENTS

In their fourth point of error, the Steenbergens claim the trial court erred by refusing to admit, for lack of authentication, certain documents which Ford had produced. The Steenbergens argue that these documents were essentially self-authenticating because they were produced by Ford in response to a request for production.

The breadth of the Steenbergens' Request No. 17 sought discovery of communications from, among others, any member of the public, any trade association, or any other automobile manufacturer. Ford produced a great many such documents, and neither party produced an individual who could attest to the contents of some of these documents. In many instances, Ford did not create the documents and could not vouch for their accuracy. Without some authenticating testimony, this evidence would properly be excluded. Production of

these documents expressed nothing more than Ford's belief that they contained information on passive restraints as described in the Steenbergens' request. *Fisher v. United States*, 425 U.S. 391, 412–13, 96 S.Ct. 1569, 1581–82, 48 L.Ed.2d 39 (1976).

■ Preliminary questions concerning admissibility of evidence are determined by the court. TEX.R.CIV.EVID. 104(a). This determination will not be overturned absent an abuse of discretion. *Garza v. Cole*, 753 S.W.2d 245, 247 (Tex.App.—Houston [14th Dist.] 1988, writ ref'd n.r.e.). Further, error may not be predicated upon a ruling which excludes evidence unless a substantial right of the party is affected. TEX. R.CIV.EVID. 103(a). And reversible error is not shown in evidentiary rulings unless the whole case turns on the particular evidence excluded. *Shenandoah Assocs. v. J & K Properties, Inc.*, 741 S.W.2d 470, 490 (Tex. App.—Dallas 1987, writ denied). We have thoroughly reviewed the excluded evidence. As to several of the documents, the source and the parties involved could not be confirmed, and Ford could not attest to the accuracy of the contents. Additionally, the record indicates that this excluded evidence was cumulative of other evidence which was admitted during the trial and, therefore, not of the sort on which the Steenbergens' case hinged. We overrule point of error four.

## POST–ACCIDENT EVENTS

In their fifth point of error, the Steenbergens complain that the trial court erred by admitting evidence concerning events which occurred subsequent to the date of manufacture of the automobile in question. Specifically, they argue that evidence of the passage of laws requiring the mandatory use of seatbelts, and use of crash-test results for cars manufactured after 1982, was inadmissible.

■ During cross-examination, one of the Steenbergens' expert witnesses was questioned about various countries around the world which had passed mandatory seatbelt use laws in 1982. The Steenbergens' objection on relevancy grounds was overruled. After recognizing that this objection was not all-encompassing, the Steenbergens later objected to all questions concerning mandatory use laws passed at any time, in any country. This objection was also overruled. As a rule, post-event regulations are inadmissible. *Turner v. General Motors Corp.*, 584 S.W.2d 844, 852 (Tex.1979). This rule, however, would not require exclusion of the pre–1982 seatbelt laws, which arguably were relevant to certain claims advanced by the Steenbergens. In both instances, however, the trial court gave a limiting instruction that the jury not consider the enactment of seatbelt laws. As a result, even if it was error to allow these questions, any error is harmless as this court must presume that the jury obeyed the limiting instruction and did not consider the evidence. *Turner, Collie & Braden v. Brookhollow, Inc.*, 642 S.W.2d 160, 167 (Tex.1982); *Texas Cookie Co. v. Hendricks & Peralta, Inc.*, 747 S.W.2d 873, 882 (Tex.App.—Corpus Christi 1988, writ denied); *In re B___ S___ L___*, 579 S.W.2d 527, 530 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.).

■ Also during cross-examination of this expert witness, Ford sought to offer into evidence summaries of crash tests which included automobiles manufactured in later model years as well as the vehicle involved here. The trial court *sustained* the Steenbergens' objection although certain testimony was allowed pertaining to comparisons of some of the test results contained in the report. Later, however, the Steenbergens' counsel *withdrew* his objection to the exhibits and tendered them himself. Because Ford now objected, the trial court did not allow the exhibits into evidence but did allow them to be used for demonstrative purposes. A party on appeal will not be heard to complain of improper evidence offered by the other side when he himself introduces the same evidence. *McInnes v. Yamaha Motor Corp., U.S.A.*, 673 S.W.2d 185, 188 (Tex.1984), *cert. denied*, 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985); *Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768, 841 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd

n.r.e.), *cert. dismissed,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988). The Steenbergens' fifth point of error is overruled.

## EXCLUSION OF CRASH TESTS

In their sixth point of error, the Steenbergens claim the trial court erred in refusing to admit crash test data its expert had obtained in another case involving Ford. They claim that the preliminary proof was sufficient to raise a fact issue as to the genuineness of the documents, and thus, the trial court should have admitted it and allowed the jury to determine the weight given to the evidence.

The Steenbergens' expert testified that he was also an expert witness in another case in which Ford was the defendant. Reports were provided to him which bore the Ford logo and other distinctive characteristics which he claimed demonstrated their authenticity. The Steenbergens sought to admit these tests, relying on Rule 901(b)(4) of the Texas Rules of Civil Evidence. The trial court questioned the witness, and determined that the witness had obtained the tests not from Ford, but from the plaintiff's attorney in the other case. When asked by the court if he could verify that nothing in the tests had been altered or omitted, the witness admitted that he could not know. After this questioning, the trial court sustained Ford's objection to the admissibility of this evidence.

■ When the authenticity of evidence is challenged, the trial court first determines preliminary questions about its admissibility. TEX.R.CIV.EVID. 104(a). Only when the preliminary proof is sufficient to raise an issue of fact on the genuineness of the evidence must the court admit it and allow the jury to determine the weight it is given. *City of Corsicana v. Herod,* 768 S.W.2d 805, 814–15 (Tex.App.—Waco 1989, no writ). Based on the witness's admitted inability to verify the authenticity of the tests, a finding that the evidence lacked the predicate for admissibility was within the sound discretion of the court. Absent clear abuse of this discretion, that finding will not be disturbed

on appeal. *Ford Motor Co. v. Nowak,* 638 S.W.2d 582, 590 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); *see also Apache Ready Mix Co., Inc. v. Creed,* 653 S.W.2d 79, 84 (Tex.App.—San Antonio 1983, writ dism'd). We overrule point of error six.

## DAILY TRANSCRIPTS

■ The Steenbergens' seventh point of error alleges the trial court erred by allowing Ford to pay a rotating trio of court reporters to produce a daily transcript of the testimony. The Steenbergens raise a variety of challenges based on the United States and Texas Constitutions. Principally, they argue that this practice denied them equal protection of the law. They further argue that the use of two official, and one unofficial, court reporters to produce these daily transcriptions, and allowing them space in the courthouse and access to public office equipment to do so, is violative of numerous provisions of the Texas Constitution, as it uses public property and funds to benefit a private litigant.

The trial court refused to provide the Steenbergens with a free copy of the transcripts which the court reporters were producing at Ford's expense. The Steenbergens urge that this was an abuse of discretion and denied them equal protection. The cases cited by the Steenbergens provide no support for their position. These cases deal primarily with criminal trials or appeals. *See, e.g., Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); *United States v. Bari,* 750 F.2d 1169 (2nd Cir.1984), *cert. denied,* 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985). Even those cases which might arguably be instructive deal with indigent defendants and do not require "absolute equality or precisely equal advantages." *Ross v. Moffitt,* 417 U.S. 600, 612, 94 S.Ct. 2437, 2444–45, 41 L.Ed.2d 341 (1974).

■ Regarding indigency, there was no showing at trial that the Steenbergens were indigent, only conclusory statements by counsel that they could not pay for copies of the daily transcripts. Regardless, the trial court offered the Steenbergens the opportunity to tape record the proceedings,

thus providing an alternative means of daily access to each day's testimony. As for use of public premises, equipment, and employees, the inherent power of a court, which is not derived from any legislative grant or specific constitutional provision, may be called upon to aid the court in the exercise of its jurisdiction and the administration of justice. This power exists to enable a court to effectively perform its judicial function. *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398–99 (Tex.1979). One aspect of this power is the court's power to compel the expenditure of public funds to efficiently fulfill its function, including payments made to personnel the court deems essential. *Mays v. Fifth Court of Appeals*, 755 S.W.2d 78, 80 (Tex. 1988) (Spears, J., concurring); *Vondy v. Commissioners Court of Uvalde County*, 620 S.W.2d 104, 109–10 (Tex.1981). Assuming that the Steenbergens have not waived the complaints grounded in the Texas Constitution by failing to raise them at trial as required by Rule 52(a) of the Texas Rules of Appellate Procedure, we find no abuse of discretion. We overrule the Steenbergens' seventh point of error.

### PREEMPTION

In a cross-point, Ford claims the trial court erred in overruling Ford's motion for summary judgment. This motion asserted that the Steenbergens' defective design complaint based on the absence of an airbag in the 1982 Ford LTD involved in the collision was preempted by federal law.

■ It has long been the rule in this state that once there has been a conventional trial on the merits, the interlocutory order overruling a motion for summary judgment is not reviewable on appeal. *Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex.1966). We overrule Ford's cross-point.

### COURT COSTS

■ North River Insurance Company, New Jersey, provided workers' compensation coverage for the decedent. North River intervened in the wrongful death action to enforce its statutory right to reimbursement for compensation benefits it paid to the decedent in the event the Steenbergen appellants had recovered at trial. The trial court entered a take-nothing judgment and taxed costs against the Steenbergens, who filed a motion to amend the judgment asking that costs be taxed jointly and severally against the Steenbergens and the two intervening insurance companies.[3] The trial court entered an Amended Final Judgment which taxed 40% of the costs of court incurred by Ford against North River and the remaining 60% against the Steenbergens. North River, as cross-appellant, claims the trial court abused its discretion in taxing costs against North River because the workers' compensation statute does not authorize a trial court to tax costs against a workers' compensation carrier intervenor in a third-party action. We agree.

■ The Texas Workers' Compensation Act as enacted by the legislature is an exact compensation scheme. And while the statute authorizes the insurance carrier to pay costs where there has been a recovery against a third party, it is silent as to costs where no recovery is had. A court cannot judicially amend a statute, adding words not implicitly contained in the language of the statute. *Aetna Casualty & Sur. Co. v. Harjo*, 766 S.W.2d 583, 583 (Tex.App.—Beaumont 1989, no writ) (citing *Jones v. Liberty Mut. Ins. Co.*, 745 S.W.2d 901, 902 (Tex.1988)). Consequently, we sustain North River's first point of error. As a result of this disposition, we need not address North River's second point of error.

The judgment of the trial court is therefore modified to tax Ford's costs against the Steenbergens, and as modified, affirmed.

---

**3.** Transport Life Insurance Company provided medical insurance coverage to the Steenbergens and intervened to recover benefits paid. Trans-

port is made an appellee by North River's points of error.