**REICHHOLD CHEMICALS, INC., Appellant,**

v.

**PUREMCO MANUFACTURING COMPANY, Appellee.**

No. 10–91–209–CV.

Court of Appeals of Texas, Waco.

May 5, 1993.

Rehearing Denied June 9, 1993.

Patrick Zummo, Ronald D. Kurtz, Baker & Botts, L.L.P., Houston, LaNelle L. McNamara, McNamara & McNamara, Waco, for appellant.

Michael G. Cosby, John E. Burleson, Jr., Pakis, Giotes, Beard & Page, Waco, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## ORDER

PER CURIAM.

Appellant's and Appellee's motions for rehearing are denied. Our opinion and judgment dated April 7, 1993, are withdrawn, and the opinion and judgment dated May 5, 1993, are substituted therefor.

## OPINION

VANCE, Justice.

In this suit brought under the Deceptive Trade Practices Act (DTPA), we determine that the court erred in admitting testimony from an expert witness after responses to discovery were not properly supplemented. Accordingly, we will reverse the judgment.

Puremco Manufacturing Company makes and sells dominos. It purchased part of the resin that it uses as a raw material for plastic dominos from Reichhold Chemicals, Inc. In September 1989, Puremco experienced an abnormal hardening of resin in the domino molds on its production line. It claims that this abnormal hardening led to damages to its property and to a loss of profits.

## PUREMCO'S CLAIMS

Puremco sued Reichhold asserting claims based on breaches of warranty, violations of the Deceptive Trade Practices Act, negligent misrepresentation, and ordinary negligence.

### DECEPTIVE TRADE PRACTICES

Puremco asserted that Reichhold delivered 38,300 pounds of resin to Puremco in June 1989; that the resin would not cure properly and was not consistent when cured; that the domino molds were ruined; that production capacity was severely curtailed just prior to its busiest season; that Puremco ordered an additional 37,000 pounds of resin, which Reichhold delivered in fifty-five gallon drums; that it experienced similar problems with the additional resin; that the resin required an unreasonably long time to cure resulting in increased costs of production; and that Reichhold violated the DTPA by representing that the resin had sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that it did not have, by representing that the resin was of a particular standard, quality, or grade when it

was of another, by failing to disclose information that, if known to Puremco, would have caused Puremco not to purchase the resin, by breaching express and implied warranties, and by engaging in an unconscionable course of action.

BREACH OF WARRANTY

Puremco asserted that Reichhold breached the implied warranty that the resin was merchantable and that it was suitable for the purpose of making dominos; that Reichhold knew that Puremco was relying on its skill or judgment to select suitable resin; and that the breaches were a cause of its damages.

NEGLIGENT MISREPRESENTATION

Alternatively, Puremco asserted that Reichhold's agents, Michael Mulvihill and David Brazell, represented to Puremco that the resin would meet its requirements for the manufacture of dominos, that the agents either knew that the representations were false or did not make reasonable inquiries about the truth of their representations, that Puremco relied on the representations to its detriment, and that the agents knew or should have known that Puremco would rely on the representations. Puremco sought recovery for damages proximately caused by the false representations.

NEGLIGENCE

Finally, Puremco asserted that Reichhold negligently breached its duty to supply resin that was appropriate for Puremco's needs and its duty to "assure and advise [Puremco] with respect to whether its storage facilities were adequate for handling the storage" of the resin, resulting in its damages.

DAMAGES

Puremco sought $1,189,723 for past and future lost profits, $69,690 for increased production costs, $2,415 for "custom orders cancelled," $6,977 for "wholesale orders cancelled," $9,525 to replace a storage tank, $3,074 for retooling new mold cavities, $1,759 for "credit card charge-back fees", and attorneys fees.

## REICHHOLD'S ANSWER AND COUNTERCLAIM

Reichhold's answer asserted as affirmative defenses: Puremco's failure to give notice under the DTPA, an express disclaimer of all warranties, the express conditions of the sale limited damages to replacement of non-conforming goods, contributory negligence, failure to mitigate damages, sole proximate and producing cause by third parties, new and independent cause by third parties, comparative responsibility, changes and alterations in the goods after delivery, misuse of the goods, and offset. Reichhold asserted a counterclaim in contract or quantum meruit for non-payment by Puremco of $25,278 for resin delivered in July 1989 and $23,-943.04 for resin delivered in September 1989 and interest on each sum.

## THE JURY FINDINGS AND THE JUDGMENT

The jury answered in the affirmative to questions inquiring:

- Did Reichhold engage in a false, misleading, or deceptive act or practice that was the producing cause of damage to Puremco?;
- Did Reichhold engage in an unconscionable action or course of action that was a producing cause of damage to Puremco?;
- Did Reichhold's negligence proximately cause the occurrence in question?;
- Did Puremco's negligence proximately cause the occurrence in question?;
- Did Puremco accept the resin delivered pursuant to the July invoice?; and
- Did Reichhold furnish compensable materials to Puremco?

The jury answered in the negative to questions inquiring:

- Did Mulvihill or Brazell engage in a false, misleading, or deceptive act or practice that was the producing cause of damage to Puremco? and
- Was the failure of Reichhold to comply with a warranty a producing cause of damages to Puremco?

The jury apportioned the negligence fifty percent to Reichhold and fifty percent to Puremco and awarded $235,482 for "lost mail order profits," $19,616 for "lost profits from mall operations," $7,500 for increased production costs, $4,762 for replacement of a storage tank, $3,038 for tooling and replacement of mold cavities, and $110,000 for attorney's fees for trial and appeals through the Supreme Court. The jury further found that $25,278 would fairly compensate Reichhold for Puremco's failure to pay the July invoice and that $11,972 was the reasonable value of the compensable materials furnished to Puremco.

Reichhold asked the court to disregard the jury's DTPA findings and the finding that Reichhold furnished Puremco $11,972 in compensable materials and to enter judgment for Reichhold for the full amount of its counterclaim. Reichhold asserted that Puremco is not entitled to lost profits as a matter of law; that there was no evidence of any representations by its agents, of a failure by its agents to disclose any information about its resin, or of any intent by its agents to withhold information; that no evidence existed that its conduct was unconscionable; that there was no evidence to support any of Puremco's complaints about its damages; that the jury's finding of a deceptive trade practice conflicted with its failure to find that Reichhold's agents committed a deceptive trade practice, with its failure to find a breach of warranty, and with its finding that Puremco accepted the resin delivered on the July invoice; and that Puremco failed to segregate its attorney's fees between the different claims and defendants.

The court entered judgment in favor of Puremco for $342,980.59, which was the net difference between (a) the damages found by the jury with prejudgment interest on certain items of damage, $2,000 as additional damages under the DTPA, and attorney's fees for the trial and appeals to the Supreme Court and (b) $59,209.61 plus prejudgment interest which the jury found to be Reichhold's damages for non-payment.

## THE DISCOVERY DISPUTE

Part A of point three complains that the court improperly allowed Puremco's expert witness to testify, and point four complains that the court improperly excluded the testimony of Reichhold's expert witnesses. We will address these points first because our disposition of them will determine how we address the remaining points.

PUREMCO'S EXPERT TESTIMONY

■ In discovery Reichhold asked Puremco:

Please state the manner including all calculations, assumptions, actual market prices, and projections by which you estimated the alleged loss incurred as a result of lost profits on lost sales to be $611,758.27.

Puremco answered the interrogatory on September 14, 1990:

Objection. The damage figures set out in this interrogatory are apparently derived from the DTPA letter forwarded to Defendants as a legal prerequisite to filing a DTPA claim, which is forthcoming in an amended pleading. The letter, as required by statute, is for settlement purposes only. The exact amount of Puremco's damage is still being assessed, and while the amounts set forth in the DTPA letter, dated May 1, 1990, would have been accepted at that time, no response was ever received from Defendants. Puremco will assess and calculate its damages as accurately as it can and, with appropriate discovery requests, will set out the manner in which it calculates those damages once they are more firmly established.

The parties do not agree about the substance or effect of this answer. Puremco contends that the answer is an objection on which Reichhold failed to seek a hearing and thus no duty arose to supplement its answer to the interrogatory. Reichhold, on the other hand, contends that Puremco undertook to partially answer the interrogatory and, having done so, must answer fully by supplementing the incomplete answer. Alternatively, Reichhold says that, whether Puremco was obligated to provide a supple-

mental answer or not, when it did answer it was obligated to do so fully and completely. We agree with Reichhold that when Puremco undertook a supplemental response it was obligated to respond fully and completely. *See Gutierrez v. Dallas Indep. School Dist.*, 729 S.W.2d 691, 693 (Tex.1987).

On August 1, 1991, thirty-three days before trial, Puremco filed a supplement to its answer to the interrogatory, stating:

In addition to the responses previously provided, *the bulk of damage calculations are available in the preliminary report of Dr. Kent Gilbreath which is available for review.* In addition, damage claims will include the following:

1. Custom orders cancelled—$2,415.00;

2. Wholesale orders cancelled—$6,977.00;

3. Increased production costs—$69,690.00 consisting at least in part, of costs to remove cured material from molds, purchase of replacement tubing and pump replacement;

4. Cost to replace tank—$9,525.00;

5. Tooling replacement mold cavities—$3,074.00;

6. Credit card chargeback fees—$1,795.00.

(Emphasis added). This supplemental response did not disclose the amount of lost-profit damages or the calculations made by Gilbreath, but relied on his report to disclose the basis for Puremco's lost-profits damages. Although counsel for Puremco contends that Gilbreath's report was transmitted to Reichhold's attorneys with the letter transmitting the supplemental answers, Reichhold's attorneys requested a copy of the report on Monday, August 5, 1991, which counsel for Puremco provided.

Reichhold says that, because it did not receive the report more than thirty days before trial, Gilbreath's testimony should have been excluded under the automatic sanction of Rule 215.[1] *See* Tex.R.Civ.P. 215(5). The question is: Did Puremco meet the thirty-day deadline if Reichhold did not receive the calculations contained in the report until Monday, August 5? The problem is compounded by Reichhold's claim that, had it received the Gilbreath report timely, it could have met the thirty-day deadline for supplementing disclosure of its experts—experts who were not permitted to testify. Its designation of experts was supplemented on Monday, August 5.

When Dr. Gilbreath was called to testify, the court had already granted Puremco's motion to exclude Reichhold's expert testimony on grounds that its designation was made too late. Reichhold, through its attorney, Patrick Zummo, objected to Gilbreath's testifying:

Your honor, we object to any testimony by this witness, because we served the proper interrogatory asking for damages calculations of the type that his report shows that he will offer, that the report was not provided to us in the time required by the rules.... [T]he fact is, we did not get the report until August 5th, which was outside the time period that this Court has already ruled was the proper time for supplementing any kind of discovery, and that was the first time that we got any kind of indication of the opinions that this witness would offer or what his calculations were. Based on that failure to supplement and based on the failure of the rest of the interrogatory answer to include a properly supplemented answer, we object to the witness being called and being questioned about damage issues under Rule 166b and under Rule 215.

When the court asked for a response, Puremco's counsel stated:

Yes, Your Honor. Our response is that the interrogatory was properly sup-

---

1. Although Reichhold did not rely on this at trial, it had also filed a request for production, asking for "all written reports rendered by expert witnesses retained by [Puremco], setting forth such witnesses' findings, factual observations, and opinions, and any notes, computations or calculations and/or other writings of whatever description forming the basis of such report or opinions." Puremco objected to the request as it might relate to consulting experts and stated, "Otherwise, no such documents yet exist." Thus, Puremco had a duty to supplement its response to the request for production. *See* Tex.R.Civ.P. 166b(6)a(1).

plemented. It designated Dr. Gilbreath as an expert to testify in the case and making it clear that his report was available for review, and including the report with the letter. *Mr. Zummo, I am not disputing, did not get his copy of the report.* Our records from our office reflect that a hand-delivery was made to Ms. McNamara's office on August 1, 1991, which included the Supplemental Response to the interrogatories, included Second Supplemental Response to Request for Production, and the Second Amended Original Petition, and *reference to the report, which I verified in our office was delivered.*

(Emphasis added). Ms. McNamara responded:

Might I respond to that, Your Honor? The signed letter that he is referring to is the letter by which he sent the records to Pat Zummo by mail, and although he received the letter, he did not receive the enclosure, and the same is true in my office.

In overruling the objection without a good-cause showing, the court determined that Puremco had properly supplemented its discovery responses. This determination was erroneous because Puremco's counsel admitted that he had not complied with the applicable part of Rule 8 of the Rules of Civil Procedure requiring that all communications be sent to the "attorney in charge." *See id.* 8. The record demonstrates that the attorney-in-charge for Reichhold was Patrick Zummo.[2]

Failure to properly supplement discovery responses results in an automatic sanction; the court has no discretion to admit evidence excluded by the rule without a showing of good cause. *Id.* 215(5); *Henry S. Miller Co. v. Bynum,* 836 S.W.2d 160, 162 (Tex.1992). Puremco relied on its assertion that it properly supplemented its responses to discovery and did not attempt to show good cause for failing to comply. Thus, given the record before us, we must hold that the court abused its discretion in al-

lowing Dr. Gilbreath to testify. We sustain part A of point three.

REICHHOLD'S EXPERT TESTIMONY

On August 5, Reichhold designated Rick Owen as an expert witness to "evaluate plaintiff's damage claims and plaintiff's business records relevant to plaintiff's damage claims." The court granted Puremco's *motion to strike the expert witness because Reichhold failed to disclose him more than thirty days prior to trial.*

Reichhold did not supplement its answers to Puremco's interrogatory inquiring about the identify of expert witnesses until Monday, August 5. The court imposed the automatic sanction of Rule 215 and did not allow the experts to testify. *See id.* Reichhold asserts three reasons why the court erred in refusing to allow its experts to testify: (1) that the supplementation was timely because the thirtieth day before trial was a Sunday, and Rule 4 allowed it to delay until the following Monday; (2) that, if the filing was not timely, Reichhold showed good cause for not complying with the discovery rule; and (3) the court's action in allowing Puremco's expert to testify and not allowing Reichhold's expert to testify was an abuse of discretion. We will address each assertion.

First, we recognize that there is a division of authority about the applicability of Rule 4 to time periods that are counted backwards in time, as opposed to those counted forward. *Compare Hammonds v. Thomas,* 770 S.W.2d 1, 3 (Tex.App.—Texarkana 1989, no writ) (holding that Rule 4 applies to Rule 166a, so that controverting affidavits required to be filed seven days before a summary-judgment hearing could be filed on July 5 when the seventh day before the hearing was July 4) *with Old Republic Ins. Co. v. Wuensche,* 782 S.W.2d 346, 348–49 (Tex.App.—Fort Worth 1989, writ denied) (affirming the refusal of an amended pleading and holding that Rule 4 does not apply to the requirement of Rule 93 that a verified denial be filed "not less than seven days before ... trial"). We

---

**2.** In the transcript before us, the earliest documents filed show that Mr. Zummo was the only attorney representing Reichhold.

believe that the Fort Worth court has the better-reasoned position and will follow its holding that "Rule 4 assumes that time calculations are not calculated backwards from a date ... [but] start with some act, event, or default" and that the rule was intended to *extend* time periods, not *shorten* them. *See Old Republic Ins. Co.,* 782 S.W.2d at 348–49; Tex.R.Civ.P. 4. Thus, Reichhold's first argument fails.

■ Second, Reichhold argues that it showed good cause for failing to timely designate its experts because (a) it had attempted to hire an expert who could not work on the matter because he worked for Puremco's law firm and (b) "Rick Owen of Arthur Anderson ... confirmed on August 2 that his firm would accept an engagement, but that he required the opinion of Puremco's damage expert to identify the individual within his firm able to comment on the opinion." Because Gilbreath's report was not delivered until Monday, August 5, Reichhold asserts that it was unable to determine the nature of Puremco's expert's testimony until that date. We are not persuaded by this argument.

Reichhold's duty under the rules is not dependent on Puremco's performance—if it wanted an expert to testify, the duty to supplement its response more than thirty days before trial existed independently of any response from Puremco. If Reichhold chose to wait on Puremco's response and rely on its ability to show good cause, it did so at its peril. The trial court had discretion to determine whether the offering party met its burden of showing good cause to admit the testimony; but the court had no discretion to admit testimony excluded by the rule without a showing of good cause. *See* Tex.R.Civ.P. 215(5). The good-cause exception permits a trial court to excuse a failure to comply with discovery in "difficult or impossible circumstances." *Alvarado v. Farah Manufacturing Company, Inc.,* 830 S.W.2d 911, 914 (Tex.1992). We do not find that Reichhold was laboring under difficult or impossible circumstances in determining which experts to timely identify. *See id.* Thus, the court did not

abuse its discretion in refusing to allow its experts to testify.

Finally, Reichhold argues that the court applied Rule 4 inconsistently in determining that Gilbreath's report was a timely supplemental response to interrogatories, but that Reichhold's supplemental response designating its experts was not timely. As we have noted, Rule 4 does not apply to the time period for supplementation.

We overrule point four.

### EVIDENTIARY CHALLENGES

In two points, Reichhold attacks the court's action in admitting certain items of evidence.

■ Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex.R.Civ.Evid. 401. Rule 402 provides in part: "Evidence which is not relevant is inadmissible." *Id.* 402. The determination of whether evidence is relevant to any issue in the case lies within the sound discretion of the court. *Russell v. Hankerson,* 771 S.W.2d 650, 654 (Tex.App.—Corpus Christi 1989, writ denied).

■ Preliminary questions concerning admissibility of evidence are determined by the court. Tex.R.Civ.Evid. 104(a). This determination will not be overturned absent an abuse of discretion. *Steenbergen v. Ford Motor Co.,* 814 S.W.2d 755, 760 (Tex. App.—Dallas 1991, writ denied), *cert. denied,* ⸺ U.S. ⸺, 113 S.Ct. 97, 121 L.Ed.2d 58 (1992). Further, error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected. Tex.R.Civ. Evid. 103(a). The test for determining whether an abuse of discretion has occurred is, did the court act contrary to the guiding rules or principles. Stated another way, was the court's action arbitrary or unreasonable? *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). The determination of whether a court abused

its discretion is a question of law. *Jackson v. Van Winkle*, 660 S.W.2d 807, 810 (Tex. 1983).

PHOTOGRAPHS

■ In point seven Reichhold contends that the court erred in refusing to admit into evidence photographs of the interior and exterior of Puremco's underground storage tank. After the evidence had closed, the court allowed Reichhold to recall Puremco's president, David Allen, to testify. Through his testimony Reichhold offered a series of nine photographs. The court admitted some of the photographs and excluded others. Reichhold asserts that Allen testified that the tank had not been cleaned or disturbed when the photographs were taken. Thus, it says, the condition of the tank was relevant to a damage issue that was submitted to the jury. Puremco asserts that Allen's testimony clearly demonstrated that the photographs do not reflect the condition of the tank at the time of the incident.

■ The admissibility of a photograph is conditioned upon its identification by a witness as an accurate portrayal of the facts and on verification by that witness or a person with knowledge that the photograph is a correct representation of such facts. *Davidson v. Great Nat'l Life Ins. Co.*, 737 S.W.2d 312, 314–15 (Tex.1987). Our review of the record reveals that the photographs that the court would not admit were those that the sponsoring witness said did not show the true condition of the tank at the relevant time, *i.e.*, when the damage was claimed to have occurred. *See id.* Thus, the court did not abuse its discretion in refusing to admit these photographs. We overrule point seven.

ACCOUNTING EVIDENCE

■ Point three also asserts that the court erred in admitting accounting evidence through Allen, who testified about and sponsored documents showing various aspects of Puremco's operations. Although Reichhold contends that Allen did not qualify as an expert, it cites no authori-

ty for the proposition that the accounting evidence was inadmissible.

Puremco pleaded that Reichhold's acts caused it to lose profits. Reichhold defended, in part, on the basis that Puremco could not recover lost profits because it had never made a profit. Allen, as president of the company, could properly testify from the records of the company about the profitability of the company and about the various components of its costs. The court could have determined that the records were relevant to the jury's evaluation of Puremco's lost-profit claim or to its claim for increased production costs. An overall evaluation of the evidence leads to the conclusion that the court did not abuse its discretion in admitting the accounting records into evidence. *See Steenbergen*, 814 S.W.2d at 760; TEX.R.CIV.EVID. 401. We overrule part B of point three.

GILBREATH'S REPORT

Part C of point three asserts that Gilbreath's written report should not have been admitted into evidence. Having held that the court abused its discretion in allowing Gilbreath to testify, we do not reach this part of point three.

## DTPA NOTICE

■ In point eight Reichhold complains of the court's denial of its special exception and plea in abatement based on an alleged failure to give adequate statutory notice under the DTPA. *See* TEX.BUS. & COM.CODE ANN. § 17.505 (Vernon Supp.1993). Puremco's original petition, filed on April 5, 1990, did not specify that the claims were brought under the DTPA. On May 1 it sent Reichhold a demand letter, asserting DTPA claims. Reichhold contends that, because a petition that does not reference the DTPA may nevertheless be sufficient to recover under the Act, the court should have abated the suit because Puremco sent no notice prior to filing the April 5 petition. Puremco acknowledges that it filed suit before giving any DTPA notice but asserts that the original suit was not a "DTPA lawsuit." Further, it asserts that a pleading filed on August 1, 1991, was the "first pleading seeking damages under … the

DTPA." Reichhold filed its Special Exceptions and Plea in Abatement on August 29, 1991—more than a year after it received the DTPA notice of May 1, 1990—apparently in response to the DTPA allegations contained in Puremco's August 1 pleading. Although the record does not reveal that the court ever acted on the special exceptions, the Plea in Abatement was denied by a written order.

■ The purpose of the notice requirement of the DTPA is to discourage litigation and to encourage settlement of consumer complaints. *Jim Walter Homes, Inc. v. Valencia*, 679 S.W.2d 29, 36 (Tex. App.—Corpus Christi 1984), *affirmed as modified*, 690 S.W.2d 239 (Tex.1985). Puremco knew on April 5, 1990, that it intended to assert a DTPA claim. On the other hand, having had a suit filed against it and having received a DTPA notice less than thirty days later, Reichhold's reason for waiting until the DTPA claims were specifically asserted to file its pleas of lack of notice is not explained or readily apparent. Puremco's notice letter of May 1, 1990, was sent more than sixty days prior to its asserting a DTPA claim. Because section 17.505 provides that a written notice is "a prerequisite to filing a suit seeking damages *under Subdivision (1) of Subsection (b) of Section 17.50*," we believe that the court correctly denied Reichhold's Plea in Abatement. *See* TEX.BUS. & COM.CODE ANN. § 17.505. Although we do not commend the practice of filing suit and giving notice under the DTPA less than 30 days later, we overrule point eight.

### WAS THE ERROR HARMLESS?

■ Having determined that the court erred in permitting Gilbreath to testify, we must determine if the error amounted to such a denial of Reichhold's rights as was reasonably calculated to cause and probably did cause rendition of an improper judgment. *See* TEX.R.APP.P. 81(b)(1). In its brief, Puremco relies heavily on Gilbreath's testimony to establish the proposition that the evidence is sufficient to sustain findings that it lost profits as a result of Reichhold's acts even though it had never made a profit as a company. Additionally, its supplement to the interrogatory, quoted above, demonstrates that most of the lost-profit damage calculations relied on by Puremco were Gilbreath's. Our review of the entire record demonstrates that, although the jury did not accept all of his testimony about lost profits, Gilbreath's testimony probably influenced the jury's verdict and the error in admitting it was therefore reasonably calculated to cause and probably did result in an improper judgment. *See id.*

### OTHER POINTS NOT REACHED

Reichhold asserts several no-evidence and insufficient-evidence points. Because we will reverse the judgment and remand the cause for another trial, we do not reach these points. Reichhold also contends that the jury's answers to questions two and three—absolving Mulvihill and Brazell of any violation of the DTPA—constitutes an irreconcilable conflict with the answer to question one. We do not reach this point or its point that the finding of attorney's fees will be immaterial or excessive if its DTPA points are sustained.

### CONCLUSION

Having sustained part A of point three and being of the opinion that the error amounted to such a denial of Reichhold's rights as was reasonably calculated to cause and probably did cause rendition of an improper judgment, we reverse the judgment and remand the cause for a new trial.