Teresa GREEN, Appellant,

v.

**TEXAS DEPARTMENT OF PROTECTIVE AND REGULATORY SERVICES, Appellee.**

No. 08–99–00253–CV.

Court of Appeals of Texas, El Paso.

Jan. 27, 2000.

---

Vivian S. Patino, El Paso, for Appellant.

Stuart L. Leeds, Donna Kay Herron, Thomas E. Stanton, Doris Sipes, Clinton Cross, Asst. County Atty., El Paso, for Appellee.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## *O P I N I O N*

RICHARD BARAJAS, Chief Justice.

This is an appeal from a decree terminating Appellant's parental rights in two of her children. For reasons stated below, we affirm the judgment of the trial court.

## I. *SUMMARY OF THE EVIDENCE*

Teresa Lynne Green married Ivan Green on August 21, 1991. Teresa entered the marriage with two daughters, A.L.R. (born in 1985) and C.R. (born in 1989), both of whom were conceived during Teresa's prior marriage to Luis Manuel Rubio.

On the morning of August 4, 1997, Teresa found blood on A.L.R.'s leg. After conducting a closer examination of her daughter, Teresa discovered that the blood was from A.L.R.'s vaginal area. After initially telling her mother that the blood was from her menstrual period, A.L.R. confessed to her mother that she and Ivan had sexual relations, and that Ivan had been abusing her for four (4) years. After learning this, Teresa took A.L.R. to the hospital where an examination was conducted. The examining physician confirmed that the bleeding was not menstrual in nature, but was from a small laceration inside A.L.R.'s vagina. The doctor was unable to confirm, however, whether intercourse had actually occurred. While being examined, A.L.R. reported to her doctor that she had been sexually assaulted by her stepfather, Ivan.

After her daughter was examined, Teresa gave a statement to the police, describing exactly what she saw on the morning of the assault. Teresa told the police that she saw Ivan and A.L.R. in the kitchen together, and that Ivan had an erect penis. She also stated: " 'They both were uneasy and moving very hurriedly around the kitchen.... When I turned to both of them in the kitchen, I noticed that [Ivan] was bending over [A.L.R.] whispering to her.' " Teresa reported that after she saw Ivan and A.L.R. in the kitchen, she caught up with them in her bedroom, where another conversation between Ivan and A.L.R. took place. Upon entering the room, Teresa recalled, " 'I couldn't hear what they were talking about, but I know the conversation changed when [Ivan] knew that I had entered the bedroom.' " Teresa also reported that she noticed a change in A.L.R.'s and Ivan's behavior: " '[A. L.R.] was acting strange, and all during this time was not looking at me.... My husband was also acting strange and avoiding me.' "

After giving her statement to the police, Teresa filed charges against Ivan. When Ivan returned from work at approximately 4:30 p.m. that afternoon, he was placed under arrest.

A.L.R. told several other people the same story she had told Teresa with regard to the ongoing sexual abuse, including her therapist, Arlene Woefel. On August 20, 1997, however, A.L.R. signed a statement which contained the following

passage: "I did not have multiple sex with Ivan Green. Any sexual activity with Ivan Green was limited to one time on August 4, 1997, at which time I had a medical examination made of me at Sierra Medical Center in El Paso, Texas." This apparently prompted Teresa to sign a non-prosecution request on August 26, 1997. In the request, Teresa provided: "I do not wish to prosecute [Ivan].... He has been a good father and provider to me and my three children. I am also pregnant with a child due in December of 1997." During the trial, A.L.R. further modified her accounts and testified that Ivan never abused her. After being questioned about her inconsistent accounts, A.L.R. told the jury that she accused Ivan of sexual abuse because he didn't allow her to go to parties as often as she would have liked and that she "felt like he had taken my mother's love away from me, but he didn't." When asked how she accounted for the injury which her mother noticed on the morning of August 4, A.L.R. told the jury that she had sneaked out of her window the previous night and had sexual intercourse with her boyfriend, whom she refused to identify.[1]

Ivan was tried on February 17, 1998 on charges of indecency with a child and aggravated sexual assault of a child. A jury issued a guilty verdict on February 19, 1998. Ivan's punishment included (1) a $10,000 fine; (2) ten years' probation; (3) an order prohibiting him from coming within 1,000 feet of Teresa's residence; and (4) an order prohibiting him from having any contact with A.L.R. or C.R.

In spite of these restrictions, however, Ivan was accused of violating the terms of his probation by entering Teresa's residence in May 1998. Teresa maintains that she and Ivan "denied any contact with [A.L.R.]." Nevertheless, due to this violation, A.L.R. and C.R. were removed from her home on May 29, 1998 and placed in foster care.[2] Then, on June 2, 1998, the Texas Department of Protective and Regulatory Services filed a petition seeking temporary managing conservatorship of A.L.R. and C.R.

On December 10, 1998, the district court issued a temporary order. The order included the following provision: "TERESA GREEN is ordered to refrain from contacting IVAN GREEN in person or by telephone or written communication; is ordered to refrain from coming within 1000 feet from his residence or place of work or any other location where she knows him to be located."[3] The temporary order also required Teresa to provide child support payments, and to comply with the service plan created by the Department which, among other things, required Teresa to attend various counseling sessions. The order provided that failure to fully comply with the order may result in the termination of parental rights. In spite of these provisions, Teresa has not paid child support and has not attended her therapy sessions on a regular basis.

Sometime in April of 1999, Teresa Green allowed Ivan to move back into her home even though Ivan explained to her that as long as he was there, A.L.R. and C.R. could not be there. A.L.R., who was living with her foster parents at the time, felt betrayed by her mother's decision to allow Ivan to move back in.[4] Then, on April 26, 1999, approximately two weeks before trial was scheduled to commence, the State amended its petition, adding a cause of

---

1. During the trial, A.L.R. was asked the following question: "And yet, as you sit here today, knowing and afraid that you might lose your mother, you are still not willing to tell us all you know about your boyfriend?" In response, A.L.R. simply replied, "No."

2. Ivan was ordered to spend 120 days in jail for violating the terms of his probation.

3. In March of 1999, the court permitted Ivan to have contact with Teresa.

4. This is according to the testimony of Mr. Falcon, A.L.R.'s foster parent.

action to terminate Teresa Green's parental rights with respect to A.L.R. and C.R. pursuant to Section 161.001 of the Texas Family Code. TEX. FAM.CODE ANN. § 161.001 (Vernon Supp.2000).[5]

On June 4, 1999, following a jury trial, the trial court found that Teresa Green (1) "knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children"; (2) "engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children"; and (3) "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child."[6] The court also found that the termination of Appellant's parental rights is in the best interest of the children. The court then entered its order terminating Teresa Green's parental rights with respect to A.L.R. and C.R. This appeal follows.

## II. *DISCUSSION*

### A. Motion for Continuance

In Point of Error No. One, Appellant argues that the trial court erroneously denied her "motion" for a continuance. During a pretrial hearing, the following exchange took place between Appellant and the trial judge: "Your Honor, we would object to going forward on a termination trial with 12 days' notice." The court responded, "Okay. We are going to proceed to trial and try before the jury the issue of custody of the Rubio girls and the issue of

termination." Appellant then asked, "May I make a record on the due process issue on that motion for continuance?" The court responded, "You have a motion for continuance?" Appellant replied, " ... I need to make that continuance motion, make it real clear, that we are moving for continuance. I will supplement the record with a motion on that after I get back to the office today."

Upon a thorough review of the record, however, we note that counsel failed to follow up her oral request for a continuance with a written motion supported by an affidavit. When questioned during oral arguments as to whether such a motion was in fact submitted, counsel indicated that there is, indeed, a motion for a continuance in the record. The motion to which counsel referred, however, was filed on April 7, 1999, almost three weeks before the State amended its petition. That motion asserted the following as grounds for a continuance:

(1) Counsel learned on April 6, 1999 at about 4:45 p.m. that Donna Heron, attorney ad litem for [A.L.R.], a child subject of this suit, intended to withdraw from her representation. This would leave [C.R.] with legal counsel and [A.L.R.] without counsel.

(2) On information and belief, [A.L.R.] has filed a declaration of intent as to her choice for managing conservator. That declaration of intent is in conflict with the representation of the Guardian ad Litem of [C.R.] that she intends to argue that the siblings should be given to the care of Petitioner Jose Rubio.

(3) This development prevents Respondent Theresa [*sic*] Green from properly preparing for trial; prevents [A.L.R.] from having an effective voice to the trier of fact; and prevents the trier of fact from considering the interests of the two siblings.... In this event this

---

5. That section is titled "Involuntary Termination of Parent–Child Relationship."

6. These acts are described under the laundry list provisions of Sections 161.001(1) of the Family Code in paragraphs D, E, and O.

matter were to proceed ... Theresa [*sic*] Green ... would be denied due process of the law.

### 1. Standard of Review

Initially, we note that "[t]he granting or denial of a motion for continuance is within the discretion of the trial court and will not be reversed unless the record shows a clear abuse of discretion." *Higginbotham v. Collateral Protection, Inc.*, 859 S.W.2d 487, 490 (Tex.App.— Houston [1st Dist.] 1993, writ denied) (citing *State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex.1988)). "In deciding whether a trial court abused its discretion, the appellate court does not substitute its judgment for that of the trial court, but only decides whether the trial court's action was arbitrary and unreasonable." *Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 635 (Tex.1986) (citing *Landry v. Travelers Insurance Company*, 458 S.W.2d 649 (Tex.1970)). Thus, we must determine whether the trial court's denial of the request for a continuance was done without reference to any guiding principles. *Higginbotham*, 859 S.W.2d at 490.

### 2. Application

Texas Rules of Civil Procedure, TEX.R. CIV. P. 251 states: "No application for a continuance shall be heard before the defendant files his defense, nor shall any continuance be granted except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." Here, Appellant's trial counsel never filed a motion for continuance in response to the third amended petition which added the involuntary termination cause of action. Thus, the trial court did not abuse its discretion in denying the oral request for a continuance. *See Metro Aviation v. Bristow Offshore Helicopters, Inc.*, 740 S.W.2d 873, 874 (Tex.App.—Beaumont 1987, no writ) (holding that the denial of an oral request for a continuance does not constitute an abuse of discretion). We overrule Appellant's first point of error.

### B. Admissibility of Photographic Evidence

In Point of Error No. Two, Appellant argues that the trial court erred by not admitting certain photographs of A.L.R. Appellant's argument is simply that "[t]he photos were necessary to an effective defense." The photographs in question depict A.L.R. at age three without clothes on. At trial, Appellant argued that the pictures should be admitted to show a sexual interest that Mr. Rubio, Teresa's ex-husband and A.L.R.'s natural father, had in A.L.R. An objection was made based on timeliness and relevance. The trial court ruled that the photographs would be made part of the record for appellate purposes only.

### 1. Standard of Review

It is well established that "[p]reliminary questions concerning admissibility of evidence are determined by the court." *Reichhold Chemicals, Inc., v. Puremco Manufacturing Co.*, 854 S.W.2d 240, 247 (Tex.App.—Waco 1993, writ denied) (citing TEX.R. CIV. EVID. 104 (a)). "This determination will not be overturned absent an abuse of discretion." *Id.* at 247 (citing *Steenbergen v. Ford Motor Co.*, 814 S.W.2d 755, 760 (Tex.App.—Dallas 1991, writ denied), *cert. denied*, 506 U.S. 831, 113 S.Ct. 97, 121 L.Ed.2d 58 (1992)). "Further, error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected." *Id.* at 247 (citing TEX.R. CIV. EVID. 103 (a)). "The test for determining whether an abuse of discretion has occurred is, did the court act contrary to the guiding rules or principles. Stated another way, was the court's action arbitrary or unreasonable?" *Id.* at 247 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986)).

### 2. Application

It is not clear to this Court of what relevance the baby photographs have in

this case where the primary issues pertain to the termination of parental rights. According to our rules of evidence, " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R. CIV. EVID. 401. Presumably, Appellant sought to introduce the pictures to demonstrate that Mr. Rubio, A.L.R.'s natural father, had an unhealthy sexual interest in his daughter. Even if we were to assume that the pictures demonstrate this unhealthy interest,[7] that issue has nothing to do with the issue of whether Appellant's parental rights should be terminated. Thus, we cannot say that the trial court abused its discretion in keeping the photographs out of evidence. We overrule Appellant's second point of error.

### C. Sufficiency of the Evidence

In Points of Error Nos. Three and Four, Appellant argues that the evidence is legally and factually insufficient to support the verdict, and that the trial court erred by denying her request for a directed verdict.

Before addressing Appellant's argument, we note that Section 161.001 of the Family Code permits a court to order the termination of the parent-child relationship if two elements are established: (1) The parent has engaged in any one of the acts listed in a laundry list of prohibited conduct; and (2) termination is in the best interest of the child. *See* TEX. FAM.

CODE. ANN. § 166.001(1) and (2) (Vernon Supp.2000). The first element of involuntary termination can be satisfied by finding that a parent violated *any one* of the items listed in the laundry list. *See Hann v. Texas Department of Protective and Regulatory Services,* 969 S.W.2d 77, 81 (Tex.App.—El Paso 1998, writ denied) (holding that a single provision listed in the laundry list is sufficient to satisfy the first element of involuntary termination). Here, the trial court found that Appellant violated three provisions found in the laundry list—provisions D, E, and O.[8] With regard to the first element of involuntary termination, Appellant only challenges the sufficiency of the evidence pertaining to provisions D and E. When asked by this Court why the sufficiency of the evidence with regard to provision O had not been challenged, counsel for Appellant simply stated that the court orders which were violated should never have been allowed into evidence. This argument, however, was not raised in Appellant's brief and has therefore been waived. *See* TEX.R.APP. P. 38.1(e) ("The brief must state concisely all issues or points presented for review. The statement of an issue or point will be treated as covering every subsidiary question that is fairly included"). Because Appellant failed to challenge the legal or factual sufficiency of the evidence with regard to provision O, the first element of involuntary termination can be affirmed based on this provision. Accordingly, we need only address whether the evidence is legally and factually sufficient to sustain the sec-

---

7. After viewing the pictures, we make no such assumption, as the pictures reveal no inappropriate behavior.

8. Section 161.001(1)D permits the court to order the termination of parental rights if the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child"; Section 161.001(1)E permits a court to order the termination of parental rights if the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional

well-being of the child"; and Section 161.001(1)O permits termination if the parent "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child." TEX. FAM.CODE. ANN. § 166.001(1)E, D, and O (Vernon Supp.2000).

ond element of involuntary termination—that termination of the parent-child relationship is in the best interest of the child.

### 1. Factual Sufficiency Standards of Review

 The burden of proof in an involuntary termination case is by clear and convincing evidence. *See* TEX. FAM.CODE ANN. § 161.001 (Vernon Supp.2000). Where the burden of proof at trial is by clear and convincing evidence, we apply the heightened standard of review announced in *Neiswander v. Bailey*, 645 S.W.2d 835 (Tex.App.—Dallas 1982, no writ) to factual sufficiency challenges. *See Hann*, 969 S.W.2d at 81 (citing *In Interest of B.R.*, 950 S.W.2d 113, 118–19 (Tex. App.—El Paso 1997, no writ)). "After considering all of the evidence, we must determine ... whether the trier of fact could reasonably conclude that the existence of the fact is highly probable." *In the Interest of B.R.*, 950 S.W.2d at 119. "Under this standard, we must consider whether the evidence was sufficient to produce in the mind of the fact finder a firm belief or conviction as to the truth of the allegations sought to be established. We will sustain an insufficient evidence point of error only 'if the fact finder could not have reasonably found the fact was established by clear and convincing evidence.'" *In the Interest of B.R.*, 950 S.W.2d at 119 (citations omitted). "Even applying the heightened standard of review which we have adopted, a factual sufficiency point requires us to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust." *Hann*, 969 S.W.2d at 82.

### 2. Legal Sufficiency Standard of Review

 Although we use a heightened standard of review for factual sufficiency challenges, we use the traditional standard of review for legal sufficiency challenges.

*See Edwards v. Texas Department of Protective and Regulatory Services*, 946 S.W.2d 130, 137 (Tex.App.—El Paso 1997, no writ). An appellate court considers only the evidence which tends to support the jury's findings and disregards all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *Worsham Steel Co. v. Arias*, 831 S.W.2d 81, 83 (Tex.App.—El Paso 1992, no writ). If any probative evidence supports the jury's determination, it must be upheld. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951); *Neily v. Aaron*, 724 S.W.2d 908, 913 (Tex.App.—Fort Worth 1987, no writ).

### 3. Application

In *Holley v. Adams*, 544 S.W.2d 367 (Tex.1976), the Texas Supreme Court recited a list of pertinent factors which may be considered in ascertaining the best interest of the child. Among the factors listed were the following:

1. The emotional and physical needs of the child now and in the future;

2. Parental abilities of the parent seeking custody;

3. Programs available to the parent seeking custody;

4. The plans for the child by the parent or the agency seeking custody;

5. The stability of the home or the proposed placement; and

6. Any acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one.

*See id.* at 372; *Hann*, 969 S.W.2d at 83; *Edwards*, 946 S.W.2d at 138.

Appellee argues that the evidence introduced at trial supports the determination that termination is in the best interest of the children. Specifically, Appellee argues that the following facts support the verdict: (1) Appellant's refusal to acknowledge that her husband sexually abused her child coupled with testimony from Janet Kaye Reynolds, a caseworker for the Child

Protective Services, and Esther Monty, a licensed professional counselor, that such a denial may pose additional risks to the children; (2) the fact that Appellant permitted Ivan to move back into the home approximately one month before the trial, coupled with the testimony of Esther Monty that a convicted sexual offender typically presents a risk of harm to the initial victim as well as other children who are in a similar age group; (3) Appellant's efforts to avoid being called to testify at her husband's criminal trial; (4) Appellant's decision to have sexual intercourse with her husband in November 1998 when Ivan Green was prohibited from having contact with her; (5) Appellant's decision to permit her husband to move into her residence one month before the termination trial even though she acknowledged that she understood that Ivan Green was prohibited from having contact with A.L.R. and C.R.; (6) Appellant's refusal or inability to pay child support, in violation of a court order; and (7) Appellant's act of allowing her husband to enter her residence in May 1998 in violation of his probation which prohibited him from having contact with A.L.R.

Under the traditional standard annunciated above, this evidence is certainly legally sufficient to support the verdict as it is probative of the instability of Appellant's home environment as well as acts and omissions of Appellant which tend to yield an improper parent-child relationship. We now turn to the issue of whether this evidence is factually sufficient under the heightened standard of review set forth above.

Appellant further argues that the finding that termination was in the best interest of the children is factually insufficient because it was premised solely upon the testimony of the foster parents that the children appeared happy. Appellant contends that such evidence falls short of the level of proof required to justify involuntary termination. Appellant also argues that termination is not in the best interest of the children because they have testified that it was their desire to live with their mother.

Appellant's argument ignores much of the evidence introduced at trial. Even if we were to agree with Appellant that mere testimony by the foster parents that the children were content being away from home is insufficient to support a finding that termination is in the children's best interest, the other evidence described above is certainly sufficient to produce in the mind of the fact finder a firm belief or conviction that (1) Appellant's home environment is unstable, and (2) Appellant's continued contact with Ivan, a convicted child molester, tends to establish an improper parent-child relationship. We also note that although the preferences of the affected children are considered, such preferences are not conclusive, particularly in a case such as this, when several of the other factors support a finding that termination is in the best interest of the children. Accordingly, we overrule Appellant's third and fourth points of error.

Having overruled each of Appellant's points of error, we affirm the judgment of the trial court.