COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-05-179-CV

 

IN THE INTEREST OF D.H., K.L.H., AND
C.H., CHILDREN                           

                                                                                                        

 

                                              ------------

 

           FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Jessica H. appeals the trial
court=s order terminating her parental rights to her children, D.H., K.L.H.,
and C.H.[2]  In three points, appellant complains that she
was harmed by the trial court=s failure to file findings of fact and conclusions of law, that the trial
court=s failure to file findings and conclusions deprived her of her
constitutional right to effective assistance of counsel, and that the evidence
is factually insufficient to support the trial court=s conclusion that termination is in the children=s best interest.  We affirm.








In its termination order, the
trial court found that appellant had (1) knowingly placed or allowed the
children to remain in conditions or surroundings that endangered their physical
or emotional well-being, (2) engaged in conduct or knowingly placed the
children with persons who engaged in conduct that endangered their physical or
emotional well-being, and (3) constructively abandoned the children.[3]  Appellant does not challenge the first two
grounds for termination.[4]  The trial court further found that
termination of appellant=s parental
rights is in the children=s best
interest. 

In her first point, appellant
complains that she was harmed by the trial court=s failure to file findings of fact and conclusions of law because she Ais forced to guess as to the factual basis for the court=s finding on the children=s best interests.@  In her second point, appellant
complains that the trial court=s failure to file findings and conclusions violated her constitutional
right to effective assistance of counsel. 








Appellant timely filed a
request for findings of fact and conclusions of law and a notice of past due
findings and conclusions.[5]  Despite these requests, the trial court did
not file any findings or conclusions. 
The State concedes that the trial court was required to prepare and file
findings of fact and conclusions of law unless appellate rule 28.1 dispenses
with these requirements because the appeal is accelerated.[6]


Rule 28.1 applies only to
interlocutory orders,[7]
and the trial court=s
termination order is final, not interlocutory. 
Further, family code section 263.405, which governs appeals from
termination orders, contemplates the filing of findings of fact and conclusions
of law, even though such appeals are accelerated.[8]  Accordingly, we hold that the trial court
improperly failed to file findings of fact and conclusions of law in this case.








If findings of fact and
conclusions of law are properly requested, the trial court must prepare and
file them.[9]  The trial court's failure to do so is
presumed harmful unless the record affirmatively shows that the complaining
party suffered no resulting harm.[10]  The purpose for requesting written findings
of fact and conclusions of law is to narrow the bases of the judgment to only a
portion of the multiple claims and defenses in the case, thereby reducing the
number of contentions that the appellant must raise on appeal.[11]  Harm may exist when the circumstances of a
case require an appellant to guess the reason the court ruled as it did,[12]
thereby preventing the appellant from properly presenting her case on appeal.[13]








In this case, appellant does
not have to guess the reasons for the trial court=s termination order because they are clearly stated in the order.[14]  Further, 
appellant has not been prevented from properly presenting her case on
appeal.  Because there is a complete
reporter=s record, appellant was afforded an opportunity to fully brief, and we
are able to fully review, whether the grounds in the termination order,
including the best interest finding, are supported by legally and factually
sufficient evidence.[15]  Therefore, the record affirmatively shows
that appellant was not harmed by the trial court=s failure to file findings of fact and conclusions of law, and she was
not deprived of her constitutional right to effective assistance of
counsel.  We overrule appellant=s first and second points.

In her third point, appellant
asserts that the evidence is factually insufficient to support the trial court=s finding that terminating her parental rights is in the children=s best interest. 








The State=s burden of proof in termination proceedings is by clear and convincing
evidence.[16]  This intermediate standard of proof falls
between the preponderance standard of ordinary civil proceedings and the
reasonable doubt standard of criminal proceedings.[17]  It is defined as the Ameasure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.@[18]

Thus, our inquiry here is
whether, on the entire record, a fact finder reasonably could form a firm
belief or conviction that termination of appellant=s parental rights is in the children=s best interest.[19]  We must consider whether the disputed
evidence is such that a reasonable fact finder could not have resolved it in
favor of the best interest finding.[20]

Nonexclusive factors that the
fact finder may use in determining the best interest of the child include:

(1)    the desires of the child;

 

(2)    the emotional and physical needs of the child now and in the
future; 

 

(3)    the emotional and physical danger to the child now and in the
future; 

 

(4)    the parental abilities of the individuals seeking custody; 

 

(5)    the programs available to assist these individuals to promote the
best interest of the child;

 

(6)    the plans for the child by these individuals or by the agency
seeking custody;

 








(7)    the stability of the home or proposed placement;

 

(8)    the acts or omissions of the parent which may indicate that the
existing parent‑child relationship is not a proper one; and

 

(9)    any excuse for the acts or omissions of the parent.[21]

 

These factors are not exhaustive; some may be
inapplicable to some cases; other factors not on the list may also be
considered when appropriate.[22]








Appellant contends that
termination is not in her children=s best interest because the children had bonded with her; appellant
had taken steps to remain sober, to provide for her children, and to maintain a
clean and safe home environment; and the children=s foster mother testified that she did not intend to adopt the
children, that their behavior was becoming difficult to deal with, and that two
of the children indicated a desire to go home to appellant.       The evidence in this case is as
follows.  The trial on termination
occurred in May 2005.  Before that time,
appellant admittedly actively used heroin and cocaine from November 2002
through mid-September 2004 with Clint H., the father of two of the
children.  Appellant=s cocaine use led her to try heroin, with which she eventually
injected herself two to three times a day. 
While appellant and Clint were living with Clint=s uncle, their drug use became so intense that their utilities were
cut off because they were too busy using drugs to earn money to pay the utility
bills. 

Appellant also admitted that,
during this same period, there were occasions when there was not enough food
for the children.  Appellant claimed
that, when this occurred, the family would go only a few hours without
sufficient food before making a trip to the local food bank; however, Clint=s brother, who had twice reported the children=s living conditions to the authorities, testified that there was Anever@ any food in
the house. 








Ronna Moore, the children=s foster mother, testified that D.H. and K.L.H. recalled having to eat
sour beans for days while in appellant=s care and said they had very little food to eat.  D.H. tried to hoard food, and Moore had to
reassure him that he would have enough food each day at her house.  K.L.H. once awoke from a nightmare asking
whether there was any food in the house. 
K.L.H. also monitored every meal and snack and became upset if C.H. got
an extra cookie.  Moore conceded that she
could not determine conclusively whether the children=s food issues were solely the result of living with appellant or were
also caused by a prior abusive and neglectful foster placement. Appellant
herself admitted, however, that if the children believed there was not enough
food when they were living with her, this assessment was correct.         Regarding her living conditions before
the children were removed from her care, appellant claimed that her house was
just Alived in.@  Clint=s brother testified, however, that in additional to having no
utilities, Athe house
was destroyed.  To me, it looked like it
needed to be condemned.@  In addition, appellant admitted that a CPS
case worker had found maggots on dirty dishes in the kitchen sink.  Appellant attributed the maggots= presence to a broken sink disposal, but admitted that having maggots
in the house was inappropriate. Appellant also acknowledged that her water and
electricity had been cut off, but claimed that she had gotten buckets of water
from a neighbor so she would have enough water to flush the toilet.  Appellant denied having to clean feces and
urine from the toilet by hand and testified that the children would not have
seen such an occurrence.  Moore
testified, however, that D.H. had recounted seeing Clint put on gloves, dig
feces and urine out of the toilet, and dispose of it in the yard.  

Although appellant admitted
that these housing conditions had endangered the children, she claimed that her
living conditions had improved by the time of trial.  But she acknowledged that, until about two
weeks before trial, she had been living in a Alittle-bitty@ camping
trailer on her mother=s property
that had no running water or indoor bathroom facilities.  Appellant agreed that the camping trailer
would not have been an appropriate living situation for her children. 








Appellant also admitted that
her stepfather, who had sexually abused her as a child, was still married to
her mother and a part of her mother=s life and still had some contact with appellant.  Appellant claimed that these contacts were
rare and caused neither her nor her mother any problems.  But the camping trailer in which appellant
had been living until just before trial was located next door to her mother=s home.  Although appellant had,
by the time of trial, relocated to a place about twenty miles away, appellant=s own witness testified to his understanding that appellant=s mother and stepfather would be a considerable part of the support
system upon which appellant would rely to meet her children=s needs.  








Appellant also testified that
she had made strides to better care for herself mentally and physically, had
made it a priority to eat right, be clean, and stay sober, and had sought and
obtained counseling from mental health services in Kansas, where she was living
at the time of trial.  Appellant
testified that after the children were removed from her care, she completed a
thirty-day in-house drug rehabilitation program in Texas in June of 2004.  She relapsed shortly after her release from the
program, stopped visiting her children after June 23, 2004,[23]
and eventually reported her renewed drug use to her CPS case worker in
September 2004.  About the same time,
appellant and Clint got into a fight, and he kicked her out of his home.  Appellant testified that this was Athe best thing he could have ever done for me.@  On September 16, 2004,
appellant moved to Kansas. 

Once in Kansas, appellant
contacted Kansas CPS and requested services. Kansas CPS could not provide
services, so appellant arranged to have urinalyses performed regularly and had
not had a dirty UA in the eight months preceding the trial on termination.  She also testified that she attempted to
attend Narcotics Anonymous meetingsCsixty miles from her home in KansasCon a monthly basis.  When she
stayed with her brother, who lived in the town where the NA meetings were held,
she attended most of the meetings that were held two to three times per week. 

Appellant had also remained
in regular contact with Ericka Robinson, her Tarrant County CPS case worker
after her move to Kansas.  Robinson
confirmed that appellant had first contacted her by telephone from Kansas on
September 30, 2004.  Appellant testified
that she had difficulty obtaining telephone contact with the children, so she
saved her money and came to Texas for a visit with the children on April 19-20,
2004, three weeks before the trial on termination began. 








Robinson confirmed this
testimony.  In December 2004, appellant
called Robinson several times requesting phone visits with the children.  Robinson testified that the Department did
not attempt to hinder these visits but acknowledged that there had been difficulty
establishing contact.  Ronna Moore, the
children=s foster mother, was apprehensive at first about appellant having her
phone number.  Robinson reassured Moore,
who then had trouble contacting appellant because of confusion over telephone
numbers.  Eventually, appellant and the
children had one supervised telephone visit in February 2005.  Appellant also sent Robinson pictures and
letters for the children two or three times. 
She did not, however, attempt to contact them on their birthdays. 

Later, appellant contacted
Robinson and said she would like to visit the children in person on April
19-20, 2005.  Robinson arranged the
visits and explained to appellant that she could visit the children from 5:00 p.m.
until 7:00 or 7:30 p.m. each day.  When
the children arrived for the visit, they did not recognize appellant at first,
but became excited when they realized who she was.  Each day, however, appellant ended the visits
at 6:00 p.m., saying that she had to drive to Houston for the night and was
tired.  In addition, Clint arrived with
appellant for the second visit, even though appellant had told Robinson that
her relationship with Clint was over and she was divorcing him. Appellant
claimed that Clint wanted one last visit with the children.  The children did not recognize him, and he
appeared jittery and declined to take a random UA because it would be dirty. 








Appellant also presented
evidence regarding her employment at a convenience store.  Her employer testified that her job
performance was Aperfect,@ that she was on time for work and dependable, that she worked more
than forty hours per week, and that her job position was Apretty permanent.@  But when the children=s attorney ad litem pointed out that appellant=s monthly expenses without the children would not leave her any extra
money once all the bills had been paid, appellant could not explain how the
children=s needs would be supplied except to say that friends would help her
out.  Further, she testified that
declaring bankruptcy was part of her plan for dealing with her financial
situation. 








Regarding her relationship
with Clint, appellant testified that he was one of the main Astressors@ in her life
that caused her to abuse narcotics and that she had learned to avoid such
stressors at all costs.  She testified
that she was divorcing Clint and tendered a copy of the divorce petition into
evidence. Appellant admitted, however, that she had taken Clint with her to
visit the children the month before trial. 
Clint=s brother
and mother testified that Clint had bragged about how he and appellant had
engaged in sexual activity together while appellant was in Texas for that
visit.  Clint=s brother also testified that Clint had said appellant planned for him
to attend a rehabilitation program once he moved to Kansas.  Both appellant and Clint denied these
allegations.  Clint testified that his
brother had merely misunderstood him and that his mother must have heard about
the alleged sexual activity from someone other than him. 

Clint=s mother testified that she wanted her grandchildren removed
permanently from Clint and appellant=s care, despite acknowledging that this testimony would ruin her
relationship with Clint.  Clint=s mother stated that appellant had no parenting skills.  For example, Clint=s mother recounted how D.H. had once approached appellant, who was
eating a sandwich, and asked for a bite of the sandwich.  Appellant had responded, AYou don=t fCing deserve it.@  








Both Robinson and Kristi
Varner, the Tarrant County child advocate volunteer for this case, testified
that they believed termination of appellant=s parental rights was in the children=s best interest.  Robinson
voiced concerns about appellant=s housing situation, her not really avoiding Clint, her cutting short
her visits with the children in April 2005, and her established pattern of
making beneficial changes for the short term while failing to provide indicia
of a long-term commitment to such changes. 
Robinson explained that appellant=s presence in a new residence for less than two weeks before trial was
not proof of a commitment to longevity there and testified that she had not
seen any proof regarding whether the home was suitable for the children.  Further, while she agreed that appellant=s job was suitable employment, Robinson testified that she needed
proof of appellant=s long-term
commitment to the job.  At the time of
trial, appellant had been employed at her job only two to four months. 








Varner testified that she was
encouraged by appellant=s efforts to
improve her situation and admitted that such changes would promote the children=s best interests.  Varner
believed, however, that termination of appellant=s parental rights would be in the children=s best interest in the long-term because appellant had made so many of
her beneficial changes so late in time. 
Varner was also concerned that appellant had not made a long-term
commitment to these changes.  Varner had
spoken with both appellant and Clint, and she had reviewed appellant=s CPS files, which evidenced her ability to remain clean for repeated
periods before relapsing into harmful conduct. For
example, appellant=s first
contact with CPS had been in 1995, concerning a child not involved in this
case.  Although appellant testified that
her parental rights to that child had not been terminated, she admitted not
knowing the child=s
whereabouts.  Appellant=s first contact with Tarrant County CPS had been in 1998 and involved
D.H.  As a result of that contact,
Appellant started, but did not complete, nutritional education services.  In 2000, as a result of CPS involvement
concerning T.L.H., appellant was offered but did not take advantage of services
aimed at helping with her housekeeping skills. Appellant claimed that her lack
of participation in all of these services was either sanctioned by CPS or not
her fault.  Appellant also admitted to
having nursing services for T.L.H. discontinued, even though T.L.H. had a Atrache tube@ as a result
of Apert Syndrome. 

Varner further testified that
D.H. and K.L.H. had improved while in Moore=s care.  D.H.=s eyes no longer showed dark circles like they had before, and he had
gained weight and looked Aawesome.@  Similarly, K.L.H. was happy,
confident, her hair now looked Agreat,@ and she
engaged in sibling rivalry with C.H. 

Finally, Moore testified
that, although K.L.H. and C.H. had indicated a desire to go home to their
mother, they wanted to stay with Moore if they could not be returned to
appellant.  She further testified that the
children got physically sick and their behavioral progress deteriorated after
their visit with appellant the month before trial.  Moore acknowledged that she did not intend to
adopt the children, but she stated unequivocally that she was willing to care
for the children until a suitable, permanent placement plan could be
established for them.  Robinson testified
that she was exploring the possibility of placing the children permanently with
a relative who had expressed an interest in taking them. 








Having carefully reviewed the
record, we hold that a fact finder reasonably could have formed a firm
conviction or belief that termination of appellant=s parental rights is in the children=s best interest.[24]  Although there is some disputed evidence, a
reasonable fact finder could have resolved it in favor of the best interest
finding.[25]  Accordingly, we hold that the evidence is
factually sufficient to support the trial court=s finding that termination of appellant=s parental rights is in the children=s best interest.  We overrule
appellant=s third
point.

Having overruled all of
appellant=s points, we
affirm the trial court=s
termination order.

 

PER CURIAM

PANEL F:    CAYCE,
C.J.; LIVINGSTON and MCCOY, JJ.

DELIVERED: 
January 19, 2006

 











[1]See Tex. R. App. P. 47.4.





[2]Appellant
does not challenge the termination of her parental rights to a fourth child,
T.L.H., based on her affidavit of relinquishment.  The father of D.H. is deceased, and the
father of K.L.H., T.L.H., and C.H. voluntarily relinquished his parental rights
to those children and is not a party to this appeal. 





[3]See Tex. Fam. Code Ann. '
161.001(1)(D), (E), (N) (Vernon Supp. 2005).





[4]Appellant
complains in passing that the trial court=s finding that she had
constructively abandoned her children is not supported by the pleadings;
however, she does not challenge the sufficiency of the evidence to support this
ground.  In light of our disposition of
this appeal, we need not consider this complaint.  See Tex.
R. App. P. 47.1; see also Tex.
Fam. Code Ann. '
161.001(1) (providing that termination is proper if any one ground in section
161.001(1) is proven).





[5]See Tex. R. Civ. P. 296B97. 





[6]See Tex. R. App. P. 28.1 (providing that trial
court Aneed
not, but may@ file
findings of fact and conclusions of law for appealable interlocutory orders).





[7]Id.;
In re K.A.F., 160 S.W.3d 923, 925 (Tex.), cert. denied sub
nom. Carroll v. Faucheux, 126 S. Ct. 483 (2005).





[8]See Tex. Fam. Code Ann. '
263.405(c) (providing that request for findings of fact and conclusions of law
does not extend accelerated deadline for filing notice of appeal).





[9]See Tex. R. Civ. P. 297; Tenery v.
Tenery, 932 S.W.2d 29, 30 (Tex. 1996); In re J.I.T.P., 99 S.W.3d
841, 848 (Tex. App.CHouston
[14th Dist.] 2003, no pet.).





[10]Tenery, 932
S.W.2d at 30; Cherne Indus., Inc. v. Magallanes, 763 S.W.2d 768, 772
(Tex. 1989).





[11]Larry
F. Smith, Inc. v. The Weber Co., 110 S.W.3d 611, 614 (Tex.
App.CDallas
2003, pet. denied).





[12]J.I.T.P., 99
S.W.3d at 848-49.





[13]Tex. R. App. P. 44.1(a)(2); Tenery,
932 S.W.2d at 30.





[14]Indeed,
appellant was required to challenge each independent ground for termination
under section 161.001(1); otherwise, we can affirm on the unchallenged
grounds.  See Green v. Tex. Dep=t of
Protective and Regulatory Servs., 25 S.W.3d 213, 219 (Tex.
App.CEl
Paso 2000, no pet.).  Here, the trial
court found three grounds for termination under section 161.001(1), and
appellant does not challenge any of them.





[15]See
J.I.T.P., 99 S.W.3d at 848-49 (holding no harm under these
circumstances); see
also Roberson v. Robinson, 768 S.W.2d 280, 281 (Tex. 1989) (holding that, when reporter=s record is filed, trial court=s findings may be challenged on
both legal and factual sufficiency grounds).





[16]TEX. FAM. CODE ANN. ''
161.001, 161.206(a); In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002).





[17]In re
G.M., 596 S.W.2d 846, 847 (Tex. 1980); In re K.W., 138 S.W.3d 420,
425 (Tex. App.CFort
Worth 2004, pet. denied).





[18]Tex. Fam. Code Ann. '
101.007 (Vernon 2002).





[19]In re
C.H., 89 S.W.3d 17, 28 (Tex. 2002).





[20]J.F.C., 96
S.W.3d at 266.





[21]Holley
v. Adams, 544 S.W.2d 367, 371‑72 (Tex. 1976).





[22]C.H., 89
S.W.3d at 27.





[23]Appellant=s
case worker testified that appellant and Clint had visited the children
regularly after the removal up to this point. 





[24]See
C.H., 89 S.W.3d at 28-29.





[25]See
J.F.C., 96 S.W.3d at 266.