IN RE D.H., K.L.H. AND C.H., CHILDREN

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-179-CV

IN THE INTEREST OF D.H., K.L.H., AND C.H., CHILDREN 

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Jessica H. appeals the trial court’s order terminating her parental rights to her children, D.H., K.L.H., and C.H.
(footnote: 2)  In three points, appellant complains that she was harmed by the trial court’s failure to file findings of fact and conclusions of law, that the trial court’s failure to file findings and conclusions deprived her of her constitutional right to effective assistance of counsel, and that the evidence is factually insufficient to support the trial court’s conclusion that termination is in the children’s best interest.  We affirm.

In its termination order, the trial court found that appellant had (1) knowingly placed or allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being, (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being, and (3) constructively abandoned the children.
(footnote: 3)  Appellant does not challenge the first two grounds for termination.
(footnote: 4)  The trial court further found that termination of appellant’s parental rights is in the children’s best interest. 

In her first point, appellant complains that she was harmed by the trial court’s failure to file findings of fact and conclusions of law because she “is forced to guess as to the factual basis for the court’s finding on the children’s best interests.”  In her second point, appellant complains that the trial court’s failure to file findings and conclusions violated her constitutional right to effective assistance of counsel. 

Appellant timely filed a request for findings of fact and conclusions of law and a notice of past due findings and conclusions.
(footnote: 5)  Despite these requests, the trial court did not file any findings or conclusions.  The State concedes that the trial court was required to prepare and file findings of fact and conclusions of law unless appellate rule 28.1 dispenses with these requirements because the appeal is accelerated.
(footnote: 6) 

Rule 28.1 applies only to interlocutory orders,
(footnote: 7) and the trial court’s termination order is final, not interlocutory.  Further, family code section 263.405, which governs appeals from termination orders, contemplates the filing of findings of fact and conclusions of law, even though such appeals are accelerated.
(footnote: 8)  Accordingly, we hold that the trial court improperly failed to file findings of fact and conclusions of law in this case.

If findings of fact and conclusions of law are properly requested, the trial court must prepare and file them.
(footnote: 9)  The trial court's failure to do so is presumed harmful unless the record affirmatively shows that the complaining party suffered no resulting harm.
(footnote: 10)  The purpose for requesting written findings of fact and conclusions of law is to narrow the bases of the judgment to only a portion of the multiple claims and defenses in the case, thereby reducing the number of contentions that the appellant must raise on appeal.
(footnote: 11)  Harm may exist when the circumstances of a case require an appellant to guess the reason the court ruled as it did,
(footnote: 12) thereby preventing the appellant from properly presenting her case on appeal.
(footnote: 13)
 In this case, appellant does not have to guess the reasons for the trial court’s termination order because they are clearly stated in the order.
(footnote: 14)  Further,  appellant has not been prevented from properly presenting her case on appeal.  Because there is a complete reporter’s record, appellant was afforded an opportunity to fully brief, and we are able to fully review, whether the grounds in the termination order, including the best interest finding, are supported by legally and factually sufficient evidence.
(footnote: 15)  Therefore, the record affirmatively shows that appellant was not harmed by the trial court’s failure to file findings of fact and conclusions of law, and she was not deprived of her constitutional right to effective assistance of counsel.  We overrule appellant’s first and second points.

In her third point, appellant asserts that the evidence is factually insufficient to support the trial court’s finding that terminating her parental rights is in the children’s best interest. 

The State’s burden of proof in termination proceedings is by clear and convincing evidence.
(footnote: 16)  This intermediate standard of proof falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings.
(footnote: 17)  It is defined as the “measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.”
(footnote: 18)
 Thus, our 
inquiry here is whether, on the entire record, a fact finder reasonably could form a firm belief or conviction that termination of appellant’s parental rights is in the children’s best interest.
(footnote: 19)  W
e must consider whether the disputed evidence is such that a reasonable fact finder could not have resolved it in favor of the best interest finding.
(footnote: 20)
 Nonexclusive factors that the fact finder may use in determining the best interest of the child include:

(1) the desires of the child;

(2) the emotional and physical needs of the child now and in the future; 

(3) the emotional and physical danger to the child now and in the future; 

(4) the parental abilities of the individuals seeking custody; 

(5) the programs available to assist these individuals to promote the best interest of the child;

(6) the plans for the child by these individuals or by the agency seeking custody;

(7) the stability of the home or proposed placement;

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9) any excuse for the acts or omissions of the parent.
(footnote: 21)

These factors are not exhaustive; some may be inapplicable to some cases; other factors not on the list may also be considered when appropriate.
(footnote: 22)
 Appellant contends that termination is not in her children’s best interest because the children had bonded with her; appellant had taken steps to remain sober, to provide for her children, and to maintain a clean and safe home environment
; and the children’s foster mother testified that she did not intend to adopt the children, that their behavior was becoming difficult to deal with, and that two of the children indicated a desire to go home to appellant.
 The evidence in this case is as follows.  The trial on termination occurred in May 2005.  Before that time, appellant admittedly actively used heroin and cocaine from November 2002 through mid-September 2004 with Clint H., the father of two of the children.  Appellant’s cocaine use led her to try heroin, with which she eventually injected herself two to three times a day.  While appellant and Clint were living with Clint’s uncle, their drug use became so intense that their utilities were cut off because they were too busy using drugs to earn money to pay the utility bills. 

Appellant also admitted that, during this same period, there were occasions when there was not enough food for the children.  Appellant claimed that, when this occurred, the family would go only a few hours without sufficient food before making a trip to the local food bank; however, Clint’s brother, who had twice reported the children’s living conditions to the authorities, testified that there was “never” any food in the house. 

Ronna Moore, the children’s foster mother, testified that D.H. and K.L.H. recalled having to eat sour beans for days while in appellant’s care and said they had very little food to eat.  D.H. tried to hoard food, and Moore had to reassure him that he would have enough food each day at her house.  K.L.H. once awoke from a nightmare asking whether there was any food in the house.  K.L.H. also monitored every meal and snack and became upset if C.H. got an extra cookie.  Moore conceded that she could not determine conclusively whether the children’s food issues were solely the result of living with appellant or were also caused by a prior abusive and neglectful foster placement. Appellant herself admitted, however, that if the children believed there was not enough food when they were living with her, this assessment was correct. Regarding her living conditions before the children were removed from her care, appellant claimed that her house was just “lived in.”  Clint’s brother testified, however, that in additional to having no utilities, “the house was destroyed.  To me, it looked like it needed to be condemned.”  In addition, appellant admitted that a CPS case worker had found maggots on dirty dishes in the kitchen sink.  Appellant attributed the maggots’ presence to a broken sink disposal, but admitted that having maggots in the house was inappropriate. Appellant also acknowledged that her water and electricity had been cut off, but claimed that she had gotten buckets of water from a neighbor so she would have enough water to flush the toilet.  Appellant denied having to clean feces and urine from the toilet by hand and testified that the children would not have seen such an occurrence.  Moore testified, however, that D.H. had recounted seeing Clint put on gloves, dig feces and urine out of the toilet, and dispose of it in the yard.  

Although appellant admitted that these housing conditions had endangered the children, she claimed that her living conditions had improved by the time of trial.  But she acknowledged that, until about two weeks before trial, she had been living in a “little-bitty” camping trailer on her mother’s property that had no running water or indoor bathroom facilities.  Appellant agreed that the camping trailer would not have been an appropriate living situation for her children. 

Appellant also admitted that her stepfather, who had sexually abused her as a child, was still married to her mother and a part of her mother’s life and still had some contact with appellant.  Appellant claimed that these contacts were rare and caused neither her nor her mother any problems.  But the camping trailer in which appellant had been living until just before trial was located next door to her mother’s home.  Although appellant had, by the time of trial, relocated to a place about twenty miles away, appellant’s own witness testified to his understanding that appellant’s mother and stepfather would be a considerable part of the support system upon which appellant would rely to meet her children’s needs.  

Appellant also testified that she had made strides to better care for herself mentally and physically, had made it a priority to eat right, be clean, and stay sober, and had sought and obtained counseling from mental health services in Kansas, where she was living at the time of trial.  Appellant testified that after the children were removed from her care, she completed a thirty-day in-house drug rehabilitation program in Texas in June of 2004.  She relapsed shortly after her release from the program, stopped visiting her children after June 23, 2004,
(footnote: 23) and eventually reported her renewed drug use to her CPS case worker in September 2004.  About the same time, appellant and Clint got into a fight, and he kicked her out of his home.  Appellant testified that this was “the best thing he could have ever done for me.”  On September 16, 2004, appellant moved to Kansas. 

Once in Kansas, appellant contacted Kansas CPS and requested services. Kansas CPS could not provide services, so appellant arranged to have urinalyses performed regularly and had not had a dirty UA in the eight months preceding the trial on termination.  She also testified that she attempted to attend Narcotics Anonymous meetings—sixty miles from her home in Kansas—on a monthly basis.  When she stayed with her brother, who lived in the town where the NA meetings were held, she attended most of the meetings that were held two to three times per week. 

Appellant had also remained in regular contact with Ericka Robinson, her Tarrant County CPS case worker after her move to Kansas.  Robinson confirmed that appellant had first contacted her by telephone from Kansas on September 30, 2004.  Appellant testified that she had difficulty obtaining telephone contact with the children, so she saved her money and came to Texas for a visit with the children on April 19-20, 2004, three weeks before the trial on termination began. 

Robinson confirmed this testimony.  In December 2004, appellant called Robinson several times requesting phone visits with the children.  Robinson testified that the Department did not attempt to hinder these visits but acknowledged that there had been difficulty establishing contact.  Ronna Moore, the children’s foster mother, was apprehensive at first about appellant having her phone number.  Robinson reassured Moore, who then had trouble contacting appellant because of confusion over telephone numbers.  Eventually, appellant and the children had one supervised telephone visit in February 2005.  Appellant also sent Robinson pictures and letters for the children two or three times.  She did not, however, attempt to contact them on their birthdays. 

Later, appellant contacted Robinson and said she would like to visit the children in person on April 19-20, 2005.  Robinson arranged the visits and explained to appellant that she could visit the children from 5:00 p.m. until 7:00 or 7:30 p.m. each day.  When the children arrived for the visit, they did not recognize appellant at first, but became excited when they realized who she was.  Each day, however, appellant ended the visits at 6:00 p.m., saying that she had to drive to Houston for the night and was tired.  In addition, Clint arrived with appellant for the second visit, even though appellant had told Robinson that her relationship with Clint was over and she was divorcing him. Appellant claimed that Clint wanted one last visit with the children.  The children did not recognize him, and he appeared jittery and declined to take a random UA because it would be dirty. 

Appellant also presented evidence regarding her employment at a convenience store.  Her employer testified that her job performance was “perfect,” that she was on time for work and dependable, that she worked more than forty hours per week, and that her job position was “pretty permanent.”  But when the children’s attorney ad litem pointed out that appellant’s monthly expenses without the children would not leave her any extra money once all the bills had been paid, appellant could not explain how the children’s needs would be supplied except to say that friends would help her out.  Further, she testified that declaring bankruptcy was part of her plan for dealing with her financial situation. 

Regarding her relationship with Clint, appellant testified that he was one of the main “stressors” in her life that caused her to abuse narcotics and that she had learned to avoid such stressors at all costs.  She testified that she was divorcing Clint and tendered a copy of the divorce petition into evidence. Appellant admitted, however, that she had taken Clint with her to visit the children the month before trial.  Clint’s brother and mother testified that Clint had bragged about how he and appellant had engaged in sexual activity together while appellant was in Texas for that visit.  Clint’s brother also testified that Clint had said appellant planned for him to attend a rehabilitation program once he moved to Kansas.  Both appellant and Clint denied these allegations.  Clint testified that his brother had merely misunderstood him and that his mother must have heard about the alleged sexual activity from someone other than him. 

Clint’s mother testified that she wanted her grandchildren removed permanently from Clint and appellant’s care, despite acknowledging that this testimony would ruin her relationship with Clint.  Clint’s mother stated that appellant had no parenting skills.  For example, Clint’s mother recounted how D.H. had once approached appellant, who was eating a sandwich, and asked for a bite of the sandwich.  Appellant had responded, “You don’t f—ing deserve it.”  

Both Robinson and Kristi Varner, the Tarrant County child advocate volunteer for this case, testified that they believed termination of appellant’s parental rights was in the children’s best interest.  Robinson voiced concerns about appellant’s housing situation, her not really avoiding Clint, her cutting short her visits with the children in April 2005, and her established pattern of making beneficial changes for the short term while failing to provide indicia of a long-term commitment to such changes.  Robinson explained that appellant’s presence in a new residence for less than two weeks before trial was not proof of a commitment to longevity there and testified that she had not seen any proof regarding whether the home was suitable for the children.  Further, while she agreed that appellant’s job was suitable employment, Robinson testified that she needed proof of appellant’s long-term commitment to the job.  At the time of trial, appellant had been employed at her job only two to four months. 

Varner testified that she was encouraged by appellant’s efforts to improve her situation and admitted that such changes would promote the children’s best interests.  Varner believed, however, that termination of appellant’s parental rights would be in the children’s best interest in the long-term because appellant had made so many of her beneficial changes so late in time.  Varner was also concerned that appellant had not made a long-term commitment to these changes.  Varner had spoken with both appellant and Clint, and she had reviewed appellant’s CPS files, which evidenced her ability to remain clean for repeated periods before relapsing into harmful conduct. For example, appellant’s first contact with CPS had been in 1995, concerning a child not involved in this case.  Although appellant testified that her parental rights to that child had not been terminated, she admitted not knowing the child’s whereabouts.  Appellant’s first contact with Tarrant County CPS had been in 1998 and involved D.H.  As a result of that contact, Appellant started, but did not complete, nutritional education services.  In 2000, as a result of CPS involvement concerning T.L.H., appellant was offered but did not take advantage of services aimed at helping with her housekeeping skills. Appellant claimed that her lack of participation in all of these services was either sanctioned by CPS or not her fault.  Appellant also admitted to having nursing services for T.L.H. discontinued, even though T.L.H. had a “trache tube” as a result of Apert Syndrome. 

Varner further testified that D.H. and K.L.H. had improved while in Moore’s care.  D.H.’s eyes no longer showed dark circles like they had before, and he had gained weight and looked “awesome.”  Similarly, K.L.H. was happy, confident, her hair now looked “great,” and she engaged in sibling rivalry with C.H. 

Finally, Moore testified that, although K.L.H. and C.H. had indicated a desire to go home to their mother, they wanted to stay with Moore if they could not be returned to appellant.  She further testified that the children got physically sick and their behavioral progress deteriorated after their visit with appellant the month before trial.  Moore acknowledged that she did not intend to adopt the children, but she stated unequivocally that she was willing to care for the children until a suitable, permanent placement plan could be established for them.  Robinson testified that she was exploring the possibility of placing the children permanently with a relative who had expressed an interest in taking them. 

Having carefully reviewed the record, we hold that 
a fact finder reasonably could have formed a firm conviction or belief that termination of appellant’s parental rights is in the children’s best interest.
(footnote: 24)  Although there is some disputed evidence, 
a reasonable fact finder could have resolved it in favor of the best interest finding.
(footnote: 25)  
Accordingly, we hold that the evidence is factually sufficient to support the trial court’s finding that termination of appellant’s parental rights is in the children’s best interest.  We overrule appellant’s third point.

Having overruled all of appellant’s points, we affirm the trial court’s termination order.

PER CURIAM

PANEL F: CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

DELIVERED:  January 19, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Appellant does not challenge the termination of her parental rights to a fourth child, T.L.H., based on her affidavit of relinquishment.  The father of D.H. is deceased, and the father of K.L.H., T.L.H., and C.H. voluntarily relinquished his parental rights to those children and is not a party to this appeal. 

3:
See
 
Tex. Fam. Code Ann.
 § 161.001(1)(D), (E), (N) (Vernon Supp. 2005).

4:
Appellant complains in passing that the trial court’s finding that she had constructively abandoned her children is not supported by the 
pleadings
; however, she does not challenge the sufficiency of the evidence to support this ground.  In light of our disposition of this appeal, we need not consider this complaint.  
See
 
Tex. R. App. P.
 47.1; 
see also 
Tex. Fam. Code Ann.
 § 161.001(1) (providing that termination is proper if any one ground in section 161.001(1) is proven).

5:
See
 
Tex. R. Civ. P.
 296–97. 

6:
See 
Tex. R. App. P.
 28.1 (providing that trial court “need not, but may” file findings of fact and conclusions of law for appealable interlocutory orders).

7:
Id.; In re K.A.F.,
 160 S.W.3d 923, 925 (Tex.), 
cert. denied sub nom. Carroll v. Faucheux,
 126 S. Ct. 483 (2005).

8:
See
 
Tex. Fam. Code Ann.
 § 263.405(c) (providing that request for findings of fact and conclusions of law does not extend accelerated deadline for filing notice of appeal).

9:
See
 
Tex. R. Civ. P.
 297; 
Tenery v. Tenery,
 932 S.W.2d 29, 30 (Tex. 1996); 
In re J.I.T.P.,
 99 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

10:
Tenery,
 932 S.W.2d at 30; 
Cherne Indus., Inc. v. Magallanes,
 763 S.W.2d 768, 772 (Tex. 1989).

11:
Larry F. Smith, Inc. v. The Weber Co.,
 110 S.W.3d 611, 614 (Tex. App.—Dallas 2003, pet. denied).

12:
J.I.T.P.,
 99 S.W.3d at 848-49.

13:
Tex. R. App. P.
 44.1(a)(2); 
Tenery,
 932 S.W.2d at 30.

14:
Indeed, appellant was required to challenge each independent ground for termination under section 161.001(1); otherwise, we can affirm on the unchallenged grounds.  
See Green v. Tex. Dep’t of Protective and Regulatory Servs.,
 25 S.W.3d 213, 219 (Tex. App.—El Paso 2000, no pet.).  Here, the trial court found three grounds for termination under section 161.001(1), and appellant does not challenge any of them.

15:
See J.I.T.P.,
 99 S.W.3d at 848-49 (holding no harm under these circumstances); 
see also Roberson v. Robinson
, 768 S.W.2d 280, 281 (Tex. 1989)
 (holding that, when 
reporter’s record is filed, trial court’s findings may be challenged on both legal and factual sufficiency grounds).

16:
T
EX
. F
AM
. C
ODE
 A
NN
. §§ 161.001, 161.206(a)
; 
In re J.F.C.
, 96 S.W.3d 256, 263 (Tex. 2002).

17:
In re G.M.
, 596 S.W.2d 846, 847 (Tex. 1980)
; 
In re K.W.
, 138 S.W.3d 420, 425 (Tex. App.—Fort Worth 2004, pet. denied).

18:
Tex. Fam. Code Ann.
 § 101.007 (Vernon 2002).

19:
In re C.H.
, 89 S.W.3d 17, 28 (Tex. 2002).

20:
J.F.C.
, 96 S.W.3d at 266
.

21:
Holley v. Adams
, 544 S.W.2d 367, 371-72 (Tex. 1976).

22:
C.H
., 89 S.W.3d at 27.

23:
Appellant’s case worker testified that appellant and Clint had visited the children regularly after the removal up to this point. 

24:
See C.H.
, 89 S.W.3d at 28-29.

25:
See J.F.C.
, 96 S.W.3d at 266
.