# NO. 12-12-00196-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE* |
| *L.O. AND K.O.,* | § | *COUNTY COURT AT LAW #2* |
| *CHILDREN* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

M.O. appeals the termination of his parental rights. In two issues, M.O. challenges the order of termination. We affirm.

## BACKGROUND

M.O. is the father of two children, L.O., born August 7, 2006, and K.O., born December 29, 2008. J.O. is the mother of both children and is not a party to this appeal.[1] On November 3, 2009, the Department of Family and Protective Services (the "Department") filed an original petition for protection of the children, for conservatorship, and for termination of M.O.'s and J.O.'s parental rights. The Department was appointed the children's temporary managing conservator, and M.O. was appointed their temporary possessory conservator.

The case proceeded to trial on April 7, 2011. During the trial, the court expressed its concerns that the evidence did not support terminating M.O.'s parental rights and specifically referred to grounds under subsections 161.001(1)(D) and (E) of the Texas Family Code. After the trial concluded, the court terminated the parent-child relationship between J.O. and the children. The trial court appointed the Department as permanent managing conservator of the

---

[1] On February 1, 2011, J.O. signed an unrevoked or irrevocable affidavit of voluntary relinquishment of parental rights to the Department of Family and Protective Services. Accordingly, on August 16, 2011, the trial court ordered the termination of her parent-child relationship with L.O. and K.O.

children, and appointed M.O. as possessory conservator of the children. Further, the trial court ordered that M.O. not be allowed visitation with the children until his release from prison. The order of termination was signed on August 16, 2011.

On November 15, 2011, the Department filed a petition requesting the court to modify the order of termination and terminate M.O.'s parental rights. The Department stated that the order to be modified was the August 2011 order of termination, and alleged that the circumstances of the children, managing conservator, possessory conservator, or other party affected by the order to be modified had materially and substantially changed since the rendition of that order. The Department also alleged that M.O. had committed one or more of the acts or omissions necessary to support termination of his parental rights under subsections 161.001(1)(D), (E), (K), (N), (O), and (Q) of the Texas Family Code, and that termination of the parent-child relationship between M.O. and the children was in the children's best interest. In his answer, M.O. alleged that the Department's claims were barred by res judicata.

The case proceeded to trial on April 26, 2012. During the trial, M.O.'s attorney requested a directed verdict regarding the Department's grounds for termination as to subsections 161.001(1)(D), (E), (K), and (O) of the Texas Family Code. The Department agreed to abandon those grounds for termination, and the children's attorney ad litem did not object. The trial court granted the request for a directed verdict as to the grounds for termination under subsections 161.001(1)(D), (E), (K), (N), and (O) of the Texas Family Code.

After the conclusion of the trial, the court found that the material allegations in the petition to modify were true and that modification was in the children's best interest. The trial court also found, by clear and convincing evidence, that M.O. had engaged in one or more of the acts or omissions necessary to support termination of his parental rights under subsection 161.001(1)(Q), and that termination of the parent-child relationship between M.O. and the children was in the children's best interest. Therefore, the trial court ordered that the parent-child relationship between M.O. and the children be terminated. The trial court also filed findings of fact and conclusions of law, which included a finding that the circumstances of the children, managing conservator, possessory conservator, or other party affected by the order to be modified had materially and substantially changed since the rendition of the order to be modified. This appeal followed.

2

Involuntary termination of parental rights embodies fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.—Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.—Texarkana 1995, writ denied).  A termination decree is complete, final, irrevocable [and] divests for all time the parent and child of all legal rights, privileges, duties, and powers with respect to each other except for the child's right to inherit.  *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.—El Paso 1998, no pet.).  Because a termination action permanently sunders the bonds between a parent and child, the proceedings must be strictly scrutinized.  *Wiley*, 543 S.W.2d at 352; *In re Shaw*, 966 S.W.2d at 179.  However, parental rights are not absolute, and it is vital that the emotional and physical interests of the child not be sacrificed at the expense of preserving that right.  *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002).

Section 161.001 of the family code permits a court to order termination of parental rights if two elements are established.  TEX. FAM. CODE ANN. § 161.001 (West Supp. 2012); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.—Waco 1999, no pet.).  First, the parent must have engaged in any one of the acts or omissions itemized in the first subsection of the statute.  TEX. FAM. CODE ANN. § 161.001(1) (West Supp. 2012); *Green v. Texas Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.—El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d at 237.  Second, termination must be in the best interest of the child.  TEX. FAM. CODE ANN. § 161.001(2) (West Supp. 2012); *In re J.M.T.*, 39 S.W.3d at 237.  Additionally, both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other.  TEX. FAM. CODE ANN. § 161.001; *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237.

Due process requires a petitioner to justify termination by clear and convincing evidence because termination is such a drastic remedy.  *In re J.M.T.*, 39 S.W.3d at 237.  The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated.  TEX. FAM. CODE ANN. § 161.001; *In re J.J.*, 911 S.W.2d at 439.  Clear and convincing evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.  TEX. FAM. CODE ANN. § 101.007 (West 2008).  There is a strong presumption that the best

3

interest of the child is served by preserving the parent-child relationship. *Wiley*, 543 S.W.2d at 352; *In re J.M.T.*, 39 S.W.3d at 240. Thus, the burden of proof is upon the person seeking to deprive the parent of their parental rights. *In re J.M.T.*, 39 S.W.3d at 240.

## STANDARD OF REVIEW

When confronted by both a legal and factual sufficiency challenge, an appellate court must first review the legal sufficiency of the evidence. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *In re M.D.S.*, 1 S.W.3d 190, 197 (Tex. App.-Amarillo 1999, no pet.). In conducting a legal sufficiency review, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id.*

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d at 25. In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id.* at 27-29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266.

This standard retains the deference an appellate court must have for the fact finder's role. *In re C.H.*, 89 S.W.3d at 26. Additionally, the trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). Thus, our review must not be so rigorous that only fact findings established beyond a reasonable doubt could withstand review. *In re C.H.*, 89 S.W.3d at 26.

4

In his first issue, M.O. argues that the trial court erred in failing to grant a dismissal regarding the ground for termination under subsection 161.001(1)(Q) because the doctrine of res judicata precluded this claim.

**Applicable Law**

Ordinarily res judicata bars a subsequent suit if the matters asserted in the subsequent suit arise out of the same subject matter as a previous suit and the matters in the subsequent suit, through the exercise of reasonable diligence, could have been litigated in the prior suit. *See **Barr v. Resolution Trust Corp. ex rel. Sunbelt Federal Sav.***, 837 S.W.2d 627, 631 (Tex. 1992). However, Section 161.004 of the Texas Family Code states that the court may terminate the parent-child relationship after rendition of an order that previously denied termination of the parent-child relationship if

> (1) the petition under this section is filed after the date the order denying termination was rendered;
>
> (2) the circumstances of the child, parent, sole managing conservator, possessory conservator, or other party affected by the order denying termination have materially and substantially changed since the date that the order was rendered;
>
> (3) the parent committed an act listed under Section 161.001 before the date the order denying termination was rendered; and
>
> (4) termination is in the best interest of the child.

TEX. FAM. CODE ANN. § 161.004(a) (West 2008). Further, at a hearing under Section 161.004, the court may consider evidence presented at a previous hearing in a suit for termination of the parent-child relationship of the parent with respect to the same child. TEX. FAM. CODE ANN. § 161.004(b) (West 2008).

As in any other case in which the Department alleges Section 161.001 as a ground for termination, the Department is required to prove that a predicate statutory ground for termination exists and that termination is in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.004(a)(3),(4). However, Section 161.004 adds a requirement that the circumstances of an involved party have materially and substantially changed since the date the prior order denying termination was rendered. *See id.* § 161.004(a)(2). This additional requirement has been

regarded as a mechanism through which the Department may, upon proper proof of a material and substantial change in circumstances, defeat a parent's claim of res judicata when, as here, the Department seeks termination after a prior petition seeking termination was denied. *See In re J.R.*, No. 07-12-00003-CV, 2012 WL 1605738, at *3 (Tex. App.—Amarillo May 8, 2012, no pet.) (mem. op.); *In re K.G.*, 350 S.W.3d 338, 349 (Tex. App.—Fort Worth 2011, pet. denied).

**Analysis**

M.O. argues the facts supporting termination under subsection 161.001(1)(Q) existed before the August 2011 order, and therefore the doctrine of res judicata precluded this claim in the second suit. We disagree. Section 161.004(b) allows termination of M.O.'s parental rights to the children after disposition of a prior petition seeking termination. *See In re J.R.*, 2012 WL 1605738, at *2. Thus, we consider Section 161.004's requirements below.

### *Prior Decree Denying Termination*

Although the August 2011 order of termination did not expressly deny termination of M.O.'s parental rights, the order was in response to a petition to terminate his parental rights. Further, the trial court stated in open court that the Department, the children's ad litem, and M.O. agreed to dismiss the petition for termination regarding M.O., that the Department would be appointed the children's permanent managing conservator, and that M.O. would have no visitation during his term of incarceration. In its findings of fact, the trial court also stated that at the conclusion of the April 2011 hearing, termination was "denied as to" M.O. On this record, we hold that the prior decree operated to deny the Department's prior request to terminate M.O.'s parental rights. *In re C.A.C.*, No. 14-12-00396-CV, 2012 WL 4465234, at *9 (Tex. App.—Houston [14th Dist.] Sept. 27, 2012, no pet.) (mem. op.).

### *Material and Substantial Change*

There are no definite guidelines as to what constitutes a material and substantial change in circumstances under Section 161.004. *In re J.R.*, 2012 WL 1605738, at *3 (citing *In re N.R.T.*, 338 S.W.3d 667, 678–79 (Tex. App.—Amarillo 2011, no pet.)). Rather the determination is made by the facts of each case. *In re N.R.T.*, 338 S.W.3d at 679.

During the first trial, the evidence showed that in 2005, M.O. was convicted of failing to comply with the sex offender registration requirements, and was placed on community supervision for a period of eight years. In 2008, M.O.'s community supervision was revoked

and he was sentenced to eight years of imprisonment. The August 2011 order of termination ordered that M.O. not be allowed visitation with the children until his release from prison. The trial court also stated in the order that "[i]t is incumbent for [M.O.] to come forward and request visits once he is released." In its findings of fact, the trial court noted that one of the reasons for its decision not to terminate M.O.'s parental rights was M.O.'s "strong belief and representation that he was to be paroled from prison in the very near future and would be able to begin a plan of service for the return of his children." However, M.O. stated in the second trial that he had been denied parole and would not be "up" for parole again until the beginning of 2013.

The evidence at the second trial also established that the children had lived with their foster family since March 2010, that the children identified their foster family as "mom and dad," and that the foster family now wanted to adopt the children. We conclude these facts, which are undisputed, evince a material and substantial change of circumstances of the children, the parent, and the foster parents after the rendition of the August 2011 order of termination. *See In re N.R.T.*, 338 S.W.3d at 679.

### *Prior Commission of Predicate Act under Section 161.001(1)(a)*

The court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has knowingly engaged in criminal conduct that has resulted in the parent's (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition. TEX. FAM. CODE ANN. § 161.001(1)(Q) (West Supp. 2012). Terminating parental rights under this subsection requires that the parent be both incarcerated or confined and unable to care for the child for at least two years from the date the termination petition is filed. TEX. FAM. CODE ANN. § 161.001(1)(Q)(ii); *In re H.R.M.*, 209 S.W.3d 105, 110 (Tex. 2006). "[I]f a parent is convicted and sentenced to serve at least two years and will be unable to provide for his or her child during that time, the [Department] may use subsection Q to ensure that the child will not be neglected." *In re A.V.*, 113 S.W.3d 355, 360 (Tex. 2003).

In some cases, neither the length of the sentence nor the projected release date is dispositive of when the parent will in fact be released from prison. *In re H.R.M.*, 209 S.W.3d at 108. Thus, evidence of the availability of parole is relevant to determine whether the parent will be released within two years. *Id*. at 109. Mere introduction of parole related evidence, however,

does not prevent a fact finder from forming a firm conviction or belief that the parent will remain incarcerated for at least two years. *Id*. Parole decisions are inherently speculative, and the decision rests entirely within the parole board's discretion. *See id*.; *In re K.R.M.*, 147 S.W.3d 628, 630 (Tex. App.—San Antonio 2004, no pet.) (stating that a father's "hope that he might be granted early release is pure speculation"); *In re R.A.L.*, 291 S.W.3d 438, 443 (Tex. App.—Texarkana 2009, no pet.).

Once the Department has established a parent's knowing criminal conduct resulting in his incarceration for more than two years, the burden shifts to the parent to produce some evidence as to how he will arrange to provide care for the child during that period. *Hampton v. Tex. Dep't of Protective & Regulatory Servs.*, 138 S.W.3d 564, 567 (Tex. App.—El Paso 2004, no pet.); *In re Caballero*, 53 S.W.3d 391, 396 (Tex. App.—Amarillo 2001, pet. denied).

Here, the evidence established that in 2008, M.O. was sentenced to eight years of imprisonment, and that his projected release date is December 2015. At a hearing in April 2010, M.O.'s mother testified that he had already been denied parole twice. At a hearing in August 2010, M.O. stated that he would be "up" for parole in November or December of 2010. At the second trial in 2012, M.O. stated that he had been denied parole, and believed he would not be "up" for parole again until March 2013. M.O. stated that there was a good possibility that he would make parole, but that he could not guarantee how much longer he would be imprisoned.

From this evidence, a reasonable trier of fact could have formed a firm belief or conviction that M.O.'s hope that he would be paroled before the two year statutory limit was pure speculation. Thus, because the Department established that M.O.'s criminal conduct resulted in his incarceration for more than two years since the date of the first petition in November 2009, M.O. was required to produce some evidence of how he would provide care for the children during that period. *See Hampton*, 138 S.W.3d at 567.

The record shows that the children have been in foster care since November 3, 2009, and that the children remained in foster care at the time of trial. Kristi Hachtel, a supervisor with the Department, testified that a home study of M.O.'s parents did not recommend placement with them. M.O. testified that he would like to take care of the children when he is released from prison. He stated that when he is released, he will work at Pilgrim's Pride and live with his parents until he can afford to get a house. M.O. admitted that because of his imprisonment, he

had not been able to support his children, and did not offer any evidence of how he would provide care for the children during the remainder of his incarceration.

Viewing the evidence in the light most favorable to the finding, a reasonable fact finder could have formed a firm belief or conviction that M.O. was convicted of failing to comply with the sex offender registration requirements, that he was sentenced to eight years of imprisonment, that he had already been denied parole at least twice, and that his discharge date of December 2015 was more than two years from the date the termination petition was filed. A reasonable fact finder could have concluded further that, based on an unfavorable home study, the children would not be placed with M.O.'s parents and that he made no suitable arrangements to provide care for his children other than foster care. Therefore, we hold that the evidence, viewed in the light most favorable to the finding, is sufficiently clear and convincing that a reasonable trier of fact could have formed a firm belief or conviction that M.O. knowingly engaged in criminal conduct that has resulted in his conviction of an offense, and imprisonment and inability to care for his children for not less than two years from the date of filing the petition.

Although there is conflicting evidence that M.O. might be granted parole by early 2013, a reasonable fact finder could have resolved these conflicts in favor of its finding. Although there is some disputed evidence, this evidence is not so significant that a reasonable trier of fact could not have reconciled this evidence in favor of its finding and formed a firm belief or conviction that M.O. knowingly engaged in criminal conduct that has resulted in his conviction of an offense, and imprisonment and inability to care for his children for not less than two years from the date of filing the petition.

### Best Interest of the Children

In determining the best interest of the child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. ***Holley v. Adams***, 544 S.W.2d 367, 371-72 (Tex. 1976).

This list is not exhaustive, but simply indicates considerations that have been or could be pertinent. *Id.* However, the best interest of the child does not require proof of any unique set of factors nor limit proof to any specific factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). The *Holley* test focuses on the best interest of the child, not the parent's best interest. *Dupree v. Texas Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). We apply the *Holley* factors below.

### *The desires of the children*

Kristi Hachtel testified that at the time of trial, L.O. was five and K.O. was three. She also stated that the children identified their foster family as "mom and dad," and that the foster family wanted to adopt the children. The foster mother testified that she, her husband, their three sons, L.O., and K.O. are "a very attached family." M.O.'s mother did not know what the children called him. M.O. admitted that he was incarcerated before K.O. was born.

### *The emotional and physical needs of the children now and in the future*

Kristi Hachtel testified that the children's foster family are "their family." Tamekala Mickey, an employee with the Department, stated that the children are doing very well with their foster parent placement. Sue Baker, the CASA representative for the children, stated that the children are "doing fantastic." The foster mother testified that the children are doing "wonderful," L.O. is progressing well in school, K.O. is learning to speak in complete sentences, and she does not "ever want to see them leave [her] family." She stated that K.O. recently had tubes put in her ears and recovered from her adenoid surgery. She also testified that the growth plates in K.O.'s legs were good. Further, she stated that L.O.'s shakes were diagnosed as being something that would not be an issue as she continued to grow.

### *The emotional and physical danger to the children now and in the future*

M.O. admitted that he was convicted of forgery in November 1998 and sexual assault in 2000. In both cases, he was placed on probation and had his probation revoked. Similarly, in 2005, M.O. was convicted of failing to comply with the sex offender registration requirements, and was placed on community supervision for a period of eight years. In 2008, M.O.'s community supervision was revoked, and he was sentenced to eight years of imprisonment. He admitted that he was imprisoned before K.O. was born. M.O. stated that because of his incarceration, he was unable to take care of his children. Moreover, he stated that when he was

incarcerated, he believed that his wife, J.O., would be able to take care of the children. However, he admitted he knew she was bipolar, drank and smoked marijuana "a little bit," and was unable to take her medication while she was pregnant. M.O. stated that he never "thought she would hurt [the] kids" or realized that the children were in danger.

### The parental abilities of the parent seeking custody

M.O. stated that he had attempted to care for his children by staying in contact with his mother, writing his children, and writing the foster parents for updates, pictures, and drawings of his children. He stated that he has had classes in life skills, and is in two faith-based programs in the prison.

### The plans for the children by the parent

The foster parents would like to adopt the children. M.O. testified that he would like to take care of the children when he is released from prison. He stated that when he is released, he will work at Pilgrim's Pride and live with his parents until he can afford to get a house. However, he did not have any current plans for the children other than for them to remain in foster care.

### The stability of the home

M.O. admitted that since 1998, he has been convicted of forgery, sexual assault, and failing to comply with the sex offender registration requirements. In each case, he was placed on community supervision, his community supervision was revoked, and he was incarcerated. He admitted that he has been incarcerated since before K.O.'s birth.

### The acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one

As previously noted, M.O. admitted that since 1998, he has been convicted of forgery, sexual assault, and failing to comply with the sex offender registration requirements. In each case, he was placed on community supervision, his community supervision was revoked, and he was incarcerated. In addition, his projected release date for his latest incarceration is December 2015. In previous hearings, M.O.'s mother testified that he had already been denied parole twice, and he stated that he would be "up" for parole in November or December 2010. At the second trial in 2012, M.O. stated that he had been denied parole, and believed he would not be "up" for parole again until March 2013.

11

Viewing the evidence in the light most favorable to the finding, a reasonable fact finder could have concluded that M.O. has been in and out of prison since 1998, never successfully completed probation, is in prison with a release date of 2015, and has been denied parole at least twice. Further, he admitted that he was unable to take care of his children, and did not have any current plans for the children other than for them to remain in foster care. M.O. also stated that he knew J.O. was bipolar, drank and smoked marijuana "a little bit," and was unable to take her medication while she was pregnant. However, he never "thought she would hurt [the] kids" or realized that they were in danger. Considering all the evidence in relation to the best interest factors in the light most favorable to the court's finding, we conclude a reasonable trier of fact could have formed a firm belief or conviction that termination was in the best interest of the children.

There is disputed testimony about whether M.O. would be released on parole in early 2013 and whether he knew that the children were in danger by being with J.O. However, the jury reasonably could have found that M.O. had already been denied parole three times, and that he knew J.O. was bipolar, drank and smoked marijuana "a little bit," and was unable to take her medication while she was pregnant. Although there is some disputed evidence, this evidence is not so significant that a reasonable trier of fact could not have reconciled this evidence in favor of its finding and formed a firm belief or conviction that terminating M.O.'s parental rights was in the best interest of the children. We hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of M.O.'s parental rights is in the best interest of the children

### *Conclusion*

Based on our review, we hold that the trial court did not err in failing to grant a dismissal regarding termination under subsection 161.001(1)(Q) because the Department proved all the requirements under Section 161.004, including that termination is in the best interest of the children. Therefore, the Department defeated M.O.'s claim of res judicata. In his second issue, M.O. contends that the evidence is legally and factually insufficient to support the trial court's finding that termination was in the best interest of the children. Our analysis under Section 161.004 includes a determination that the evidence is legally and factually sufficient to support this finding. Therefore, we overrule M.O.'s second issue.

12

## DISPOSITION

Having overruled M.O.'s first and second issues, we *affirm* the judgment of the trial court.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered November 21, 2012.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)



# COURT OF APPEALS
# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS
# JUDGMENT

### NOVEMBER 21, 2012

### NO. 12-12-00196-CV

### IN THE INTEREST OF L.O. AND K.O., CHILDREN

Appeal from the County Court at Law #2

of Angelina County, Texas. (Tr.Ct.No. CV-42696-09-11)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

# THE STATE OF TEXAS
# M A N D A T E

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**TO THE COUNTY COURT AT LAW #2 of ANGELINA COUNTY, GREETING:**

Before our Court of Appeals for the 12th Court of Appeals District of Texas, on the 21st day of November, 2012, the cause upon appeal to revise or reverse your judgment between

**IN THE INTEREST OF L.O. AND K.O., CHILDREN**

**NO. 12-12-00196-CV; Trial Court No. CV-4296-09-11**

Opinion by James T. Worthen, Chief Justice.

was determined; and therein our said Court made its order in these words:

"THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance."

**WHEREAS, WE COMMAND YOU** to observe the order of our said Court of Appeals for the Twelfth Court of Appeals District of Texas in this behalf, and in all things have it duly recognized, obeyed, and executed.

**WITNESS, THE HONORABLE JAMES T. WORTHEN**, Chief Justice of our Court of Appeals for the Twelfth Court of Appeals District, with the Seal thereof affixed, at the City of Tyler, this the _____ day of _____, 201____.

CATHY S. LUSK, CLERK


By:_____
    Deputy Clerk